**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**Tallahassee Division**

WILLIAM DEMLER, individually,
and on behalf of all others similarly situated,

     Plaintiff,

vs.                                   **Case No.**

MARK S. INCH, in his official capacity as
Secretary of the Florida Department of
Corrections,

     Defendant.
_____/

**CLASS ACTION COMPLAINT**
**FOR INJUNCTIVE AND DECLARATORY RELIEF**

The Florida Department of Corrections (FDOC) has effectively stolen millions of dollars of digital music and books from the prisoners in its custody. After years of selling these digital media files to FDOC prisoners for listening during their incarceration, the FDOC recently implemented a statewide policy forcing prisoners to surrender their digital media players, rescinding access to all of their digital music and books, and requiring them to re-purchase their digital media files from the FDOC's new contractor. This policy has resulted in the confiscation of the lawfully purchased property of thousands of prisoners, for which the FDOC has not paid just compensation, in violation of the Takings Clause of the Fifth Amendment, and the Due Process Clause of the Fourteenth Amendment. Plaintiff,

William Demler, brings this class action lawsuit to redress the confiscation of his property and the property of thousands of other prisoners that was unlawfully taken by the FDOC pursuant to its unconstitutional policy.

## Preliminary Statement

1.     Like many state prison systems, the FDOC permits its prisoners to access electronic music files and books.  This is not a purely altruistic exercise; the FDOC also profits from the availability of electronic media files to prisoners in its custody.

2.     To induce prisoners to purchase files, the FDOC explicitly promised that prisoners would own any purchased files forever.   The promise had its intended effect:  From 2011 to 2017, the FDOC, through its prior vendor, sold nearly 6.7 million digital media files, at a cost of roughly $11.3 million to prisoners and their families.   The FDOC itself realized approximately $1.4 million in commissions on these sales during the same time period.

3.     In April 2017, however, the FDOC terminated its contract with its existing vendor, in favor of a competing vendor contract with higher profit margins.  But to achieve such profits, the FDOC realized that financial concessions would have to be made.  Rather than make those concessions itself, the FDOC decided that its prisoners would pay the price.

4.     As such, and for the sole purpose of making its new vendor contract more profitable for both itself and its vendor, the FDOC instituted and implemented a formal, statewide policy and practice which mandated the confiscation of all digital media files that had been lawfully purchased by current FDOC prisoners, without just compensation, forcing prisoners to re-purchase these songs from the FDOC's new vendor (the "Multimedia Tablet Policy").

5.     Plaintiff, William Demler, individually and on behalf of all others similarly situated, brings this class action lawsuit against Defendant, Mark S. Inch, in his official capacity as Secretary of the FDOC, challenging the constitutionality of the FDOC's policy and actions under the Takings and Due Process Clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution, and seeks declaratory and injunctive relief on behalf of all such persons.

## **Jurisdiction and Venue**

6.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 in that this is a civil action arising under the Constitution of the United States, and pursuant to 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under color of state law, of rights secured to Plaintiff and the putative class by the Constitution and laws of the United States.

7.     Plaintiff's claims for relief are predicated, in part, upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law,

of rights, privileges, and immunities secured by the Constitution and laws of the United States, and upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

8.      Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, as well as Rules 57 and 65 of the Federal Rules of Civil Procedure.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and § 1391(c), as Defendant does business in this judicial district and division, and many of the events or omissions giving rise to the claims occurred in this judicial district and division.

## **Parties**

10.      Plaintiff, William Demler, is an individual currently incarcerated at the FDOC's South Florida Reception Center, South Unit, at 13910 N.W. 41st Street, Doral, Florida 33178-3014.  Mr. Demler is serving a life sentence.

11.      Plaintiff has exhausted all available administrative remedies.

12.      Defendant, Mark S. Inch, is the Secretary of the Florida Department of Corrections.  In this capacity, he is responsible for the overall operation of the FDOC, including the operation of Florida's prison facilities, compliance with the U.S. Constitution and federal laws, and the promulgation and enforcement of all

FDOC rules, regulations, policies and practices, including, but not limited to, the Multimedia Tablet Program.

13.     Defendant Inch has statutory authority to implement the relief sought in this Complaint.  *See* Fla. Stat. § 20.315.

14.     The actions of Defendant Inch and his agents were performed under color of state law and constitute state action.  All staff members mentioned herein were employees or agents of Defendant and acted within the scope of their employment or agency at all relevant times.

15.     Defendant Inch is sued in his official capacity for injunctive and declaratory relief, and as such may be referred to herein as the "Florida Department of Corrections" or the "FDOC."

### General Factual Allegations

*History of the FDOC's Digital Music Player Program*

16.     Started in 2011 in select facilities, the stated purpose of the FDOC's Digital Music Player Program was to provide a secure method by which FDOC prisoners could browse, select, purchase and download digital content to specialized digital media (MP3/MP4) players made explicitly for use by inmates in a correctional setting.

17.     In or about 2014, the FDOC decided to expand the program, and attempted to secure a single contractor for the provision and operation of its Digital

Music Player Program statewide.   As such, the FDOC invited proposals from qualified vendors that had experience in the provision of large-scale MP3 player program services in correctional or other security and law enforcement settings.

18.   As part of this bidding process, both the FDOC's Invitation to Negotiate Contractual Services, as well as the FDOC's Request for Proposal for Contractual Services, explicitly stated that compatibility with the FDOC's prior vendor was a mandatory requirement of the contract, in order to ensure that prisoners would not bear the cost of the transition between vendors:

> [T]he proposed system must allow for inmates who currently have a device and/or songs purchased from the current Contractor to transfer and/or obtain updated equipment and/or music compatible with the successful contractor's Digital Music Player Program.  It is the intent of the Department that the implementation of a new Digital Player Program to have little or no financial impact on inmates presently participating in the Department's current program.

19.   In or about 2014, pursuant to these guidelines, the FDOC granted the Digital Music Player Program contract to Keefe Commissary Network, LLC, doing business as Access Corrections.

20.   Under the Digital Music Player Program, FDOC prisoners had the ability to purchase one of two specially designed digital media players, for either $99.95 or $119.95 depending on storage capacity, as well as various accessories for the players, including ear buds ($16.00), armbands ($15.00), and screen protectors ($6.00).

21.    Under the Digital Music Player Program, FDOC prisoners also had the ability to purchase digital media files – including music and audiobooks – for use with the specially designed media player, using funds from their inmate accounts.  In order to purchase digital media files—available to FDOC prisoners at a cost of $1.70 per file or song—FDOC prisoners were required to purchase blocks of "Prepaid Media Credits," which required FDOC prisoners to purchase a minimum of five files or songs at a cost of $8.50.

22.    FDOC prisoners purchased these blocks of credits using a Florida Department of Corrections MP4 Order Form, which was available at each FDOC institution. These forms were then picked up and processed by Access Corrections' representatives, on a bi-monthly basis, acting on behalf of, and at the direction of, the FDOC.

23.    FDOC prisoners could then use these prepaid credits by securely connecting their digital media player to a kiosk at their FDOC institution, allowing them to access the MP3/MP4 Player Music Library and download available files or songs to a cloud-based library reserved for their use.

24.    FDOC prisoners also used the kiosks to transfer their downloaded digital media files from their cloud-based library to their specific digital media player device.  While FDOC prisoners could only transfer the number of digital media files that would fit within the memory capacity of his or her digital media

player, there was no limit on the number of credits, files, or songs that an FDOC prisoner could purchase, own, or maintain in their cloud-based library.

25.     In order to utilize the digital media player, FDOC prisoners were also required to connect their players to one of the kiosks at their FDOC institution at regular intervals, in order to extend the device's Security Timer.  If an FDOC prisoner failed to, or was unable to, connect his or her digital media player to a kiosk every thirty (30) days, the digital media player would be automatically disabled, in order to prevent fraudulent use of the device as well as its use outside of the FDOC's facilities.

26.     Pursuant to the FDOC's rules and regulations, at all relevant times, FDOC prisoners were not permitted to purchase, obtain, or otherwise own any digital media player other than the one offered by, and purchased through, the Digital Music Player Program, nor were FDOC prisoners permitted to purchase, obtain, or otherwise own any digital media files other than those offered by, and purchased through, the Digital Music Player Program.

27.     In order to encourage prisoners to purchase digital media players, digital media files, and accessories, the FDOC published numerous advertisements that were posted in various FDOC institutions and provided to prisoners.  These advertisements touted various qualities of the digital media players offered by the FDOC, including their memory capacity, operating power, and screen size.

28.    In addition to touting the qualities of the digital media players themselves, at least one widely-distributed advertisement, which appeared on the digital media player order form itself, also touted various qualities of the Digital Music Player Program, including the following representation:

> Browse, search and preselect songs from updated music catalogs holding millions of song titles representing a wide array of music genres. You have the ability to purchase and listen to unlimited music utilizing the re-download feature free of charge. <u>Once music is purchased, you'll always own it</u>! (emphasis supplied).

29.    This representation was made by the FDOC to Plaintiff, and all participating FDOC prisoners, to induce them into purchasing digital media files.

30.    This advertisement also included information about restrictions that the FDOC placed on the purchase or use of digital media players and/or files purchased through the Digital Music Player Program, pursuant to its internal rules and regulations. Notably, the same advertisement that promised participating FDOC prisoners that they would "always own" the digital media files they had purchased listed only one restriction – that each FDOC prisoner was only permitted to possess one digital media player at any given time.

31.    Similarly, the FDOC repeatedly represented to prisoners that they were permitted to delete and re-order digital media files that they had purchased from the cloud-based library, at any time and at no additional cost. In explaining this system, the user guide that accompanied many of the digital media players

emphasized this re-ordering capability, and explicitly stated that prisoners would never have to purchase the same song or book twice:

> You can delete and Re-Order songs as often as you want.  You will never be charged for a song that is ordered from the Re-Order Manager.  After all, you have already paid for the song once; we don't think you should ever have to pay for it again.

32.     Upon information and belief, none of the materials provided to FDOC prisoners regarding the operation of the Digital Music Player Program suggested or informed participating FDOC prisoners that their digital media file purchases would only be available for use during the span of the FDOC's contract with Access Corrections, including, but not limited to, notices, advertisements, order forms, and/or user guides.

33.     Similarly, upon information and belief, none of the FDOC's internal rules or regulations ever suggested or informed participating FDOC prisoners that their digital media file purchases would only be available for use during the span of the FDOC's contract with Access Corrections.

34.     Based in no small part on the belief by FDOC prisoners that any purchases they made through the Digital Music Player Program could be accessed at least for the duration of their incarceration with the FDOC, the Digital Music Player Program was a financial success for the FDOC.

35.     From 2011 to 2017, FDOC prisoners purchased approximately 6.7 million digital media files through the Digital Music Player Program, at a cost of

roughly $11.3 million to those prisoners and their families, while the FDOC itself realized approximately $1.4 million in commissions on these sales during the same time period.

36.     FDOC prisoners purchased these electronic media files specifically to listen to them in prison.  FDOC prisoners do not have Internet access, and many do not have ready access to AM/FM radios.  Many do not have jobs or meaningful work assignments.  Prison can be a stressful environment, and many prisoners have large amounts of idle time.  FDOC prisoners purchased these songs for their use in prison, to alleviate some of the stress and difficulties that come with prison life.

### The FDOC's Transition to the Current Multimedia Tablet Program

37.     In April 2017, the FDOC terminated its contract with Access Corrections and entered into a new contract with a competing vendor – Jpay, Inc. – that allows the FDOC to realize even higher profit margins.

38.     In order to implement its new contract, the FDOC ended the Digital Music Player Program and began to transition to the current Multimedia Tablet Program.

39.     Under the Multimedia Tablet Program, the FDOC offers two multimedia tablets for sale to FDOC prisoners, for either $79.99 or $129.99, depending on the screen size of the tablet.  Similar to the previous program, the

Multimedia Tablet Program also allows prisoners to purchase digital music and other files and listen to those files on their tablets.

40.    However, the Multimedia Tablet Program came with a significant downside for all prisoners who had participated in the previous program: they would be required to surrender their digital media players to the FDOC and lose access to all of their digital music and books, regardless of whether they chose to participate in the Multimedia Tablet Program or not.

41.    In order to implement the Multimedia Tablet Program, the FDOC first cut off access to those prisoners' cloud-based libraries in January 2018, preventing them from downloading their own previously purchased music and books.

42.    Then, pursuant to the Multimedia Tablet Program, the FDOC has forced, and is forcing, all FDOC prisoners who had participated in the previous Digital Media Player Program to surrender their lawfully purchased digital media players—including all of the digital media files on the player—to the FDOC, on the date that they receive a new tablet under the Multimedia Tablet Program.   For those prisoners who chose not to receive a new tablet, the FDOC set a deadline of January 23, 2019 to surrender their digital media player.

43.    Pursuant to the Multimedia Tablet Policy, on the date that the FDOC forces a prisoner to surrender their digital media player and files, that prisoner is given the option to mail their digital media player to Access Corrections to have

the Security Timer removed and mailed to someone outside of prison (for a fee of

$24.95), or have the digital media files that were stored on the player transferred to

a CD and then mailed to someone outside of prison (for the same fee).[1]

44.    The option to send the player and/or files to someone outside of prison

does not cure the problem.  As noted above, FDOC prisoners purchased the digital

players and music to listen to them and enjoy them *while in prison*—not at some

unspecified time in the future.  Further, many FDOC prisoners are serving life

sentences (or a term so long it is the functional equivalent of life), or have no

family or friends on the outside to whom to send the player or CD.  For these

prisoners in particular, the option to mail out the player is completely illusory.

45.    Moreover, upon information and belief, for digital music files that

were stored in prisoners' cloud-based library but not on their digital media player,

there was no option to retrieve them and send them to someone outside of prison;

these files were simply gone forever.

46.    Despite previous assurances from the FDOC that prisoners would

"always own" the digital media files they had purchased under the previous

program, the FDOC did not permit prisoners to transfer *any* of the digital media

files that they had purchased under the previous program to the new multimedia

---

[1] It is unclear whether any prisoners have been able to utilize either of these options, however,
and whether the FDOC and/or Access Corrections have complied with any such requests.

tablets, regardless of whether such digital media files were contained on the prisoner's digital media player itself or in the prisoner's cloud-based library.

47.    If prisoners want to listen to the digital music and books they had under the previous program, they are required to re-purchase them under the current Multimedia Tablet Program.

48.    Prisoners were forced to surrender their digital media players, and lost access to their digital files as described above, regardless of whether they chose to additionally purchase a multimedia tablet through the Multimedia Tablet Program, the length of their sentence, or whether they have identifiable family members to whom to send their property.

49.    In order to incentivize prisoners to participate in the Multimedia Tablet Program, the FDOC offered the multimedia tablets to all prisoners at a 50% discount for the first 60 days of availability.  Prisoners who had purchased a digital media player under the previous program also had the opportunity to obtain a multimedia tablet during the same time period, at either no cost (a $40 discount) or for $50.00 (a $15 discount), depending on the screen size of the tablet, and were also supposed to receive a $10.00 media credit within two weeks of placing their tablet order.

50.    These same incentives were offered to all FDOC prisoners who had purchased a digital media player through the previous Digital Media Player

Program, regardless of the number of digital media files any particular inmate had purchased or the value of such property at the time of its confiscation by the FDOC.  The FDOC offered no other compensation for the taking of these digital media player and digital files.

51.     Since the implementation of the Multimedia Tablet Program, FDOC prisoners have written hundreds of grievances and administrative appeals complaining about the arbitrary confiscation of their property without compensation.  The FDOC, through its Bureau of Contract Management, has denied all such grievances and appeals.

52.      In response to the outpouring of grievances and appeals, the FDOC developed standard response language.   That language acknowledges the significant investment that FDOC prisoners and their families have made in the Digital Media Player Program, stating, among other things, "we understand that some inmates have made a significant investment in music with their current digital music players," and "we are aware that family members over the years have provided funds for their loved one to add music to their current MP3 player."

53.     Despite these acknowledgements, the FDOC has denied all such grievances and appeals and continues to move forward with the Multimedia Tablet Program without modification.

54.     Moreover, the FDOC has even explicitly admitted that the confiscation of lawfully purchased property without compensation was done to allow the FDOC and its new vendor to realize additional profits, stating in several grievance responses that the confiscation of all prisoners' digital media files is "necessary" because "the download of content purchased from one vendor to another vendor's device would negate the new vendor's ability to be compensated for their services."

55.     In addition, the FDOC's standard grievance response language simply tells prisoners that their loss of property will be good for them in the long run, stating, "It is unfortunate that the music cannot be transferred, however, we hope that overtime [sic] the family and the inmate will see the added value of the new program."

*Factual Allegations Regarding Plaintiff William Demler*

56.     Plaintiff, William Demler, is a current FDOC prisoner who has been, and continues to be, deprived of his constitutional rights as a result of the FDOC's Multimedia Tablet Program.

57.     In 2012, while incarcerated at the FDOC's Hamilton Correctional Institution in Jasper, Florida, Mr. Demler purchased a digital media player through the FDOC's Digital Media Player Program for $99.95.

58.     Having viewed the FDOC's advertisements for its Digital Media Player Program, Mr. Demler believed that he would "always own" any digital media files purchased by him through the Digital Media Player Program and for use with his digital media player.

59.     Relying on this belief, Mr. Demler subsequently purchased approximately 335 digital media files through the FDOC's Digital Media Player Program.  Mr. Demler spent $569.50 on the purchase of these digital media files, excluding additional costs for the digital media player, as well as ear buds and other necessary accessories.

60.     Then, in 2017, despite assurances from the FDOC that he would "always own" the digital media files he had purchased, the FDOC informed Mr. Demler not only that it was terminating the Digital Media Player Program and replacing it with the Multimedia Tablet Program, but also that he would not be permitted to retain any of his digital media files, regardless of whether those files were contained on his digital media player or in his cloud-based library and even if he chose to purchase a tablet through the FDOC's new program, and would instead be forced to surrender his property to the FDOC's custody.

61.     FDOC informed Mr. Demler that he would now only be permitted to keep the digital media player and/or files he had purchased through the Digital Media Player Program until the earlier of a) his receipt of a multimedia tablet

through the Multimedia Tablet Program, if he chose to purchase one, or b) January 23, 2019.

62.    While the FDOC informed Mr. Demler that he could have his digital media player and/or files mailed to a family member for an additional fee, Mr. Demler is serving a life sentence, and the only family with whom Mr. Demler has any contact is a 92-year old uncle, who has no use for Mr. Demler's digital music player and/or files.

63.    As such, and with no other options at his disposal, in October 2018, Mr. Demler surrendered his digital media player and all of his digital media files to the FDOC's custody, pursuant to the Multimedia Tablet Program.   While Mr. Demler accepted the smaller-sized multimedia tablet at no cost, he was completely deprived of the use and enjoyment of all of his lawfully purchased songs and digital media files.   The money he had invested in his digital media files has been effectively stolen from him.

## Class Action Allegations

64.    Plaintiff brings this action as a class action, pursuant to Rule 23(a) and 23(b)(2), Federal Rules of Civil Procedure, for declaratory and injunctive relief on behalf of himself and a class of all persons similarly situated.

65.    Plaintiff brings this class action pursuant to the Takings Clause of the Fifth Amendment to the U.S. Constitution and the Due Process Clause of the

Fourteenth Amendment to the U.S. Constitution, and is a member of, and seeks to represent, a class of persons and entities ("Plaintiff Class") defined as:

> "All FDOC prisoners whose digital media files were taken, or will be taken, pursuant to the Multimedia Tablet Program."

66.     Class Size (Fed. R. Civ. P. 23(a)(1)): Plaintiff avers that the proposed class is in excess of 50 persons. The class size is so numerous that joinder of all members is impracticable.

67.     Commonality (Fed. R. Civ. P. 23(a)(2)): There are questions of law and fact common to all members of the Plaintiff Class.   Common material questions of fact and law include, but are not limited to, the following:

a.  the scope and nature of Defendant's Multimedia Tablet Program;

b.  whether Defendant offered just compensation to inmates whose property was confiscated pursuant to the Multimedia Tablet Program;

c.  whether the implementation and enforcement of the Multimedia Tablet Program violates the Takings Clause of the Fifth Amendment to the U.S. Constitution;

d.  whether the implementation and enforcement of the Multimedia Tablet Program violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution;

e.  whether Plaintiff and the other members of the class are entitled to declaratory relief; and

f.  whether Plaintiff and the other members of the class are entitled to injunctive relief.

68.  Typicality (Fed. R. Civ. P. 23(a)(3)): The claims of the named Plaintiff are typical of the claims of all members of the class.  The named Plaintiff has suffered injuries similar in kind and degree to the injuries suffered by the members of the class.  The Defendant has acted the same with respect to the named Plaintiff and all class members.  The named Plaintiff makes the same claims and seeks the same relief for himself and for all class members.

69.  Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4)): The named Plaintiff will fairly and adequately represent and protect the interests of the class members.  Plaintiff is committed to this cause, will litigate it vigorously, and is aware of the fiduciary duties of a class representative.  Plaintiff's interests are consistent with and not antagonistic to the interests of the other class members. Plaintiff has a strong personal interest in the outcome of this action and has retained experienced class counsel to represent him and the other class members.

70.  Class Counsel is experienced in civil rights and class action litigation on behalf of prisoners and has successfully litigated such claims.

71.  Fed. R. Civ. P. 23(b)(2): Defendant has acted or refused to act on grounds generally applicable to the members of the class, thereby making

appropriate final injunctive and declaratory relief with respect to the class as a whole.

## CAUSES OF ACTION

### Count 1
### Takings Clause of the Fifth Amendment to the U.S. Constitution
### via 42 U.S.C. § 1983

72.    Plaintiff reasserts and incorporates herein by reference all averments set forth in all paragraphs preceding the Causes of Action section, above.

73.    Plaintiff's claim for relief on this Count One is predicated upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured by the Fifth and Fourteenth Amendments to the U.S. Constitution and the laws of the United States, and upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

74.    Plaintiff and the putative class have a constitutionally protected and fundamental right to property in their purchased digital media files.

75.    Pursuant to the Takings Clause of the Fifth Amendment to the U.S. Constitution, made applicable to the states and their agencies through the Fourteenth Amendment to the U.S. Constitution, private property shall not be taken without just compensation.

76.     Through the implementation of the Multimedia Tablet Program, Defendant FDOC has violated the Takings Clause by taking the private property of prisoners who purchased digital media files without just compensation.

77.     The implementation and enforcement of the Multimedia Tablet Program is facially unconstitutional under the Takings Clause, as it requires the taking of private property of prisoners without just compensation.

78.     Plaintiff and the putative class purchased digital media files through the Digital Media Player Program with funds from their inmate accounts, and at the time of purchase the digital media files were authorized property for Plaintiff and the putative class to possess.

79.     Defendant's Multimedia Tablet Program has invaded and interfered with Plaintiff's and the putative class's legally protected property interests.

80.     Defendant has deprived Plaintiff and the putative class of their possessory right, use, and enjoyment of the digital media files they purchased through the Digital Media Player Program, without just compensation, through the implementation and enforcement of its Multimedia Tablet Program.

81.     The Multimedia Tablet Program constituted a direct government appropriation of private property.

82.     Defendant's Multimedia Tablet Program has or will result in the permanent deprivation of Plaintiff and the putative class's possessory rights, use,

and enjoyment of the digital media files they purchased through the Digital Media Player Program.

83.     Defendant's Multimedia Tablet Program was not implemented to address any improper use of the digital media files purchased through the Digital Media Player Program by Plaintiff and the putative class, and was not implemented to address any security concern.

84.     Plaintiff and the putative class are entitled to and have not been provided with just compensation for the taking.

85.     Plaintiff and the putative class have no adequate state court remedies to redress this taking.

86.     As a direct and proximate cause of Defendant's official policy and actions, Plaintiff and the putative have suffered, and will continue to suffer, from violation of their rights under the Takings Clause of the Fifth Amendment.  These harms will continue unless enjoined by this Court.

## Count 2
## Fourteenth Amendment to the U.S. Constitution: Substantive Due Process via 42 U.S.C. §1983

87.     Plaintiff reasserts and incorporates herein by reference all averments set forth in all paragraphs preceding the Causes of Action section, above.

88.     Plaintiff's claim for relief on this Count Two is predicated upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of

state law, of rights, privileges and immunities secured by the Fourteenth Amendments to the U.S. Constitution and the laws of the United States, and upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

89.   Plaintiff and the putative class have a constitutionally-protected and fundamental right to property in their purchased digital media files.

90.   Plaintiff and the putative class purchased digital media files through the Digital Media Player Program with funds from their inmate accounts, and at the time of purchase the digital media files were authorized property for Plaintiff and the putative class to possess.  Accordingly, Plaintiff and the putative class have a right to the digital media files through the Digital Media Player Program.

91.   Defendant has deprived Plaintiff and the putative class of their possessory right, use, and enjoyment of the digital media files they purchased through the Digital Media Player Program.

92.   Defendant's Multimedia Tablet Program was not implemented to address any improper use of the digital media files purchased through the Digital Media Player Program by Plaintiff and the putative class.

93.   Defendant's implementation and enforcement of the Multimedia Tablet Program was, and is, arbitrary and irrational under color of law.

94.    The Multimedia Tablet Program was implemented in Defendant's legislative capacity, as the Program has broad-ranging impacts for large segments of the FDOC population, rather than being directed at a particular person.

95.    The Multimedia Tablet Program is arbitrary and capricious, does not bear a substantial relation to the public health, safety, morals, or general welfare, has no rational basis, was undertaken for an improper motive, and is therefore an invalid exercise of the police power.

96.    The Multimedia Tablet Program is facially unconstitutional under the substantive Due Process Clause of the Fourteenth Amendment.

97.    The deprivation of Plaintiff's and the putative class's property was the result of an abuse of governmental power.

98.    These actions are essentially theft and breach of contract, and as such, shock the conscience.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in his favor and against Defendant and requests an order:

> A. certifying this action as a class action pursuant to Rule 23(b)(2), appointing Plaintiff William Demler as the representative of the

members of the class defined above, and appointing the undersigned as counsel for the members of the class;

B.  finding and declaring that Defendant has violated the Takings Clause of the Fifth Amendment to the U.S. Constitution through its implementation of the Multimedia Tablet Program;

C.  finding and declaring that Defendant has violated the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution by violating the substantive due process rights of Plaintiff and the putative class through its implementation of the Multimedia Tablet Program;

D.  granting Plaintiff and the putative class preliminary and permanent injunctive relief that will restore their access while in prison to the digital media files they purchased through the Digital Media Player Program;

E.  awarding Plaintiff attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

F.  granting such other and further relief as this Court deems appropriate.

Respectfully submitted,

Shawn A. Heller, Esq.
Florida Bar No. 46346
shawn@sjlawcollective.com
Joshua A. Glickman, Esq.
Florida Bar No. 43994
josh@sjlawcollective.com

Social Justice Law Collective, PL
974 Howard Ave.
Dunedin FL 34698
Tel: (305) 323-6433

Dante P. Trevisani, Esq.
Florida Bar No. 72912
dtrevisani@floridajusticeinstitute.org
Ray Taseff, Esq.
Florida Bar No. 352500
rtaseff@floridajusticeinstitute.org

Florida Justice Institute, Inc.
100 S.E. 2nd Street
3750 Miami Tower
Miami, Florida 33131-2309
305-358-2081
305-358-0910 (FAX)

By:     *s/Joshua A. Glickman*
         Joshua A. Glickman, Esq.