## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### Tallahassee Division

WILLIAM DEMLER, individually and
on behalf of a Class of persons similarly situated,

    Plaintiffs,

v.                               Case No.  4:19-cv-00094-RH

MARK S. INCH, in his
official capacity as Secretary of the
Florida Department Corrections,

    Defendant.

_____

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff, William Demler, by and through undersigned counsel, hereby moves to certify this case as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) and Local Rule 23.1, N.D. Fla.

### Introduction

The Florida Department of Corrections (FDOC) has implemented a statewide policy requiring all prisoners in the FDOC's custody to surrender their lawfully purchased digital media players and rescinding those prisoners' access to their lawfully purchased digital music. This statewide policy has resulted in the confiscation of over $11 million in lawfully purchased property from tens of

thousands of prisoners, for which the FDOC has not paid just compensation, and which was taken without any rational basis or proper motive.

Plaintiff, William Demler, seeking to represent a class of persons similarly situated, alleges that this confiscation violates the Takings Clause of the Fifth Amendment, and the Due Process Clause of the Fourteenth Amendment. He now seeks to certify the following class to redress this unconstitutional confiscation, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) (for injunctive and declaratory relief):

> "All current FDOC prisoners whose digital media files were taken, or will be taken, pursuant to the FDOC's Digital File Confiscation Policy."

## **Factual Background**[1]

### *The Digital Media Player Program*

In or around 2011, the FDOC created a program in certain facilities that allowed prisoners to purchase digital media players and access digital music files through an exclusive FDOC vendor (the "Digital Media Player Program"). Demler Dec. (Ex. 1) at ¶ 5. Taken statewide in 2014, the Program allowed FDOC prisoners to purchase these files and use them with specially designed players. *Id*. The Digital Media Player Program was the exclusive method for prisoners to access or purchase electronic music files; prisoners were prohibited from

---

[1] Plaintiff is only providing the facts necessary for this Motion for Class Certification. Further facts will be presented at the appropriate time.

purchasing or using any other digital player or purchasing any other media file other than the ones offered by the FDOC.  *Id.* at ¶ 15.

Under this program, prisoners, through their inmate accounts, could purchase blocks of "Prepaid Media Credits," which they could then use by securely connecting their digital media players to a kiosk at their institution, where they could download available files to a cloud-based library reserved for their use.  *Id.* at ¶¶ 9-13; MP3/MP4 Program Notice of New Procedures (Ex. 2); MP3/MP4 Order Form (Ex. 3).  Prisoners could also transfer their downloaded digital media files from their cloud-based library to their own player.  Demler Dec. (Ex. 1) at ¶ 13.  While there was a limit on the number of files that could fit within the memory of their respective device, there was no limit on the number of files that a prisoner could purchase, own, or maintain in their cloud-based library. *Id*. This allowed prisoners to transfer files back and forth between their device and their cloud-based library.  *Id*.

The Digital Media Player Program was wildly popular—from 2011 to 2017, at least 19,000 prisoners purchased a digital media player.  *See* Florida Inmates with MP3/MP4 Players (Ex. 4).[2]

---

[2] This exhibit was received through a public records request from the FDOC and was entitled "Florida Inmates With MP3 MP4."

*The Multimedia Tablet Program and Digital File Confiscation Policy*

In 2017, the FDOC terminated its contract with its original vendor and signed a new contract with a competing one, thereby creating the Multimedia Tablet Program.  Under this program, FDOC prisoners can purchase tablets (instead of media players) and can similarly download digital media files for listening on their tablets.  But this new program came with a cost: The FDOC, exercising its sole authority, established and enforced a separate statewide policy under which it confiscated all digital media files and players that had been lawfully purchased under the previous Digital Media Player Program. The FDOC implemented this policy by forcing prisoners to surrender their media players and then rescinding access to all of the digital media files they had lawfully purchased under the previous Digital Media Player Program.  Just compensation was not paid for these takings.  This policy and practice is referred to herein as the "Digital File Confiscation Policy" or "Confiscation Policy."

The Confiscation Policy proceeded in the following way.  In 2017, the FDOC began posting notices informing prisoners about the transition to the Multimedia Tablet Program, the fact that prisoners would lose access to their files, and the various dates on which these events would occur.  Demler Dec. (Ex. 1) at ¶¶ 24-25; Notice to Inmates re Multimedia Kiosk/Tablet Program (Ex. 5); Notice to Inmates re Digital Media Player Program (Ex. 6). In October 2017, the FDOC

cut off access to the digital files contained in prisoners' cloud-based libraries that were purchased under the Digital Media Player Program.[3]  Demler Dec. (Ex. 1) at ¶ 27. Then, the FDOC required all prisoners to surrender their digital media players, including all the digital files on the players, to the FDOC on the date they received a new tablet under the Multimedia Tablet Program.  *Id*. at ¶¶ 25 & 30; Notice to Inmates re Digital Media Player Program (Ex. 6).  For those prisoners who chose not to get a new tablet, the FDOC set a deadline of January 23, 2019, to surrender their digital media players.  Demler Dec. (Ex. 1) at ¶ 25; Notice to Inmates re Digital Media Player Program (Ex. 6).  The Confiscation Policy applied to all prisoners who participated in the Digital Media Player Program, whether or not they purchased a tablet under the new Multimedia Tablet Program.  Demler Dec. (Ex. 1) at ¶ 26.

The FDOC did not permit prisoners to transfer any of the digital media files that they had purchased under the previous Digital Media Player Program to the new multimedia tablets.  Demler Dec. (Ex. 1) at ¶ 31; Notice to Inmates re Multimedia/Kiosk Tablet Program (Ex. 5); Demler Grievance Response (Ex. 7).  If prisoners want to listen to the music they had bought under the prior program, they have to re-purchase the files from the FDOC's new vendor.  Demler Dec. (Ex. 1) at ¶ 31.  The FDOC acknowledged that the Confiscation Policy was implemented to

---

[3] Although the notices stated that access would be cut off in January 2018, it actually occurred three months earlier, in October 2017.

ensure higher profits for its new vendor.  *See* Ballard Grievance Response (Ex. 8) (stating that inmates could not keep their old music because it would "negate the new vendor's ability to be compensated for their services.").

For those prisoners who participated in the Digital Media Player Program and who chose to also participate in the Multimedia Tablet Program, a free or discounted tablet was offered to them, along with a $10 media credit that can be used to purchase digital files through FDOC's new vendor. Demler Dec. (Ex. 1) at ¶ 29; Notice to Inmates re Multimedia/Kiosk Tablet Program (Ex. 5).  Other than this—to the extent this can be deemed compensation at all, which Plaintiff disputes—no compensation was paid to FDOC prisoners for the confiscation of their digital media files.[4]  Demler Dec. (Ex. 1) at ¶ 33.

### *Plaintiff William Demler*

In 2012, Plaintiff William Demler purchased a digital media player through the FDOC's Digital Media Player Program for $99.95.  Demler Dec. (Ex. 1) at ¶ 7. He subsequently spent $569.50 on approximately 335 digital media files.  *Id*. at ¶ 21. In 2017, pursuant to the Confiscation Policy, the FDOC informed Mr. Demler that it was terminating the Digital Media Player Program and replacing it with the Multimedia Tablet Program, that he was required to surrender his media player and

---

[4] Mr. Demler has since received additional media credits, which arrived without explanation, from FDOC's new vendor.  Demler Dec. (Ex. 1) at ¶ 32.  Plaintiff also disputes that these constitute compensation for this taking.  Regardless, this has no bearing on class certification.

all of the media files on it, and that he would lose access to his digital files stored in his cloud-based library. *Id*. at ¶ 25. Pursuant to the Confiscation Policy, the FDOC then cut off Mr. Demler's access to the files in his cloud-based library in October 2017. *Id*. at ¶ 27. In October 2018, Mr. Demler accepted a new tablet under the Multimedia Tablet Program, and at that time was forced to surrender his digital media player that he had purchased under the Digital Media Player Program. *Id*. at ¶ 30. While he received the tablet and media credit mentioned herein, he received no compensation for this taking. *Id*. at ¶33.

*   *   *

In sum, thousands of FDOC prisoners lawfully purchased digital media files, which were then confiscated by the FDOC pursuant to a statewide policy. Mr. Demler's experience mirrors that of every prisoner affected by the policy. This case should therefore proceed as a class.

## Argument

As set forth below, Plaintiff's proposed class satisfies the four requirements of Rule 23(a) and is appropriate under Rule 23(b)(2). Class certification is a procedural issue, and the court's inquiry is limited to determining whether the proposed class satisfies the requirements of Rule 23. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). Moreover, while some consideration of the merits may be necessary, "Rule 23 grants courts no license to engage in free-

ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,* 568 U.S. 455, 466 (2013). The focus of the inquiry is whether the requirements of Rule 23 are satisfied.

## I.   The requirements of Rule 23(a) are satisfied.

Rule 23(a) contains four requirements for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). All four are clearly met here.

### A. Numerosity– Rule 23(a)(1).

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." However, "a plaintiff need not show the precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co*., 696 F.2d 925, 930 (11th Cir. 1983). Indeed, "the focus of the numerosity inquiry is not whether the number of proposed class members is 'too few' to satisfy the Rule, but 'whether joinder of proposed class members is impractical.'" *In re Checking Account Overdraft Litig*., 275 F.R.D. 666, 671-72 (S.D. Fla. 2011) (quoting *Armstead v. Pingree,* 629 F. Supp. 273, 279 (M.D. Fla. 1986)). Further, "[i]n assessing impracticability, 'courts should take a common-sense approach which

takes into account the objectives of judicial economy and access to the legal system.'" *Bradley v. Harrelson*, 151 F.R.D. 422, 426 (M.D. Ala. 1993) (quoting 1 Herbert B. Newberg, *Newberg On Class Actions* § 3.03 (2d Ed.1985)).   Toward that end, courts in the Eleventh Circuit have found joinder impracticable and the numerosity requirement satisfied in cases with even a minimal number of class members.   *See Cox v. Amer. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (40 class members); *Napoles-Arcilia v. Pero Family Farms, LLC*, 2009 WL 1585970 (S.D. Fla. 2009) (38 class members); *Moreno-Espinosa v. J&J Ag. Products, Inc.*, 247 F.R.D. 868, 688 (S.D. Fla. 2007) (40 class members).

Plaintiff's proposed class easily satisfies the numerosity requirement.   Based on data and information made available through a Public Records Act request, 19,386 FDOC prisoners possessed a digital media player and accompanying digital media files that they had purchased under the Digital Media Player Program at the time that the FDOC announced the statewide Confiscation Policy challenged herein. *See* Florida Inmates with MP3/MP4 Players (Ex. 4).   While some of these prisoners have been released from the FDOC's custody since that time, there are undoubtedly a sufficient number remaining such that joinder of these persons would be impractical, and the numerosity requirement is thus easily satisfied.

### B. Commonality – Rule 23(a)(2).

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class."  However, "[t]his part of the rule 'does not require that all the questions of law and fact raised by the dispute be common,' . . . or that the common questions of law or fact 'predominate' over individual issues." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (internal citation omitted). Indeed, "[t]he commonality element is generally satisfied when a plaintiff alleges that '[d]efendants have engaged in a standardized course of conduct that affects all class members.'" *Checking Account Overdraft Litig.*, 275 F.R.D. at 673 (citations omitted).  *See also Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 153 (N.D. Cal. 2015) ("In a civil rights case, commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.").   This "relatively light" burden, *Vega*, 564 F.3d at 1268, merely "requires the plaintiff to demonstrate that the class members have 'suffered the same injury.'"  *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011) (citation omitted).

Here, the proposed class members have all been subjected to the same course of conduct by the FDOC.  Through the Digital Media Player Program, the FDOC permitted and encouraged prisoners to purchase digital media files for use during their incarceration.  Years later, to ensure higher profits for its new vendor,

the FDOC, exercising its sole authority, announced the confiscation of those files pursuant to the Confiscation Policy.  While prisoners were offered a free (or discounted) player and a $10 music credit from the new vendor, no compensation was provided for the taking of their property.  The FDOC's policy was implemented system-wide and was designed to equally affect all prisoners who owned digital media files from the Digital Media Player Program—and in fact did so. This is the "standardized course of conduct" necessary to satisfy commonality. *Checking Account Overdraft Litig.*, 275 F.R.D. at 673.

Indeed, although commonality requires only "that there be at least one issue whose resolution will affect all or a significant number of the putative class members[,]" this case presents several common issues.  *Williams v. Mohawk Indus., Inc*., 568 F.3d 1350, 1355 (11th Cir. 2009) (quotation/citation omitted). *See also Wal-Mart Stores,* 564 U.S. at 359 (noting that a single common question is sufficient, as long as it affects all class members).   They include, among others: 1) whether Defendant offered just compensation to prisoners whose property was confiscated pursuant to the Confiscation Policy; 2) whether the implementation and enforcement of the Confiscation Policy violates the Takings Clause of the Fifth Amendment to the U.S. Constitution; 3) whether the implementation and enforcement of the Confiscation Policy violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution; 4) whether Plaintiff and other

-11-

members of the class are entitled to declaratory relief; and, 5) whether Plaintiff and other members of the class are entitled to injunctive relief. A class proceeding will generate common answers to these questions. *See Wal-Mart Stores*, 564 U.S. at 350. Accordingly, this case should join the long line of cases certifying classes of incarcerated people challenging a central prison or jail policy. *See, e.g., Gwiazdowski v. Cty. Of Chester,* 263 F.R.D. 178, 187 (E.D. Pa. 2009) (finding commonality in case challenging jail's strip search policy); *Olson v. Brown*, 284 F.R.D. 398, 411 (N.D. Ind. 2012) (finding commonality in case challenging jail's mail-opening policy); *Lyon v. United States Immigration & Customs Enf't*, 300 F.R.D. 628, 642 (N.D. Cal. 2014) (finding commonality in case challenging detention center's telephone policies); *Meisberger v. Donahue*, 245 F.R.D. 627, 630 (S.D. Ind. 2007) (finding commonality in case challenging prison's policy on nudity in incoming mail).

Even if the class members' precise experiences with the policy may vary, "factual differences among the claims of the putative class members do not defeat certification." *Cooper v. Southern Co.,* 390 F.3d 695, 713 (11th Cir. 2004) (quotations/citations omitted). *See also Parsons v. Ryan,* 754 F.3d 657, 675 (9th Cir. 2014) ("'[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists.'") (citation omitted). Here, for example, the fact that some

prisoners chose to send their media player to someone outside the prison while others simply surrendered it to the FDOC makes no difference on the issue of commonality.  In both instances, the injury to the prisoner is the same:  they were denied the use and enjoyment of their digital files while incarcerated.  More importantly, their predicament was uniformly the result of the FDOC's standardized practice under the Confiscation Policy. "Where such a policy exists, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." *Hernandez*, 305 F.R.D. at 153.

Many prison civil rights cases do not challenge a "policy" in the traditional sense; they challenge extremely broad prison conditions—such as deficient medical care and excessive violence—that naturally affect all prisoners differently. *See, e.g., Parsons v. Ryan,* 289 F.R.D. 513, 516–23 (D. Ariz. 2013), *aff'd at* 754 F.3d 657 (9th Cir. 2014) (finding commonality in case challenging medical and mental healthcare provided to 33,000 inmates in Arizona); *Jones v. Gusman,* 296 F.R.D. 416, 465–66 (E.D. La. 2013) (finding commonality for claims by jail detainees regarding failures to protect inmates from violence and inadequacies in medical and mental health care). If these classes satisfy the commonality requirement, Plaintiff's proposed class, which is limited to challenging only *one* identifiable policy—the Confiscation Policy—must satisfy the commonality requirement as well.

Moreover, while this is a civil rights case, it shares similarities to consumer cases where a remedy is sought for the redress of a uniform legal violation resulting from a standardized practice that affects a large number of people in the same way. Such cases are especially well suited for class action treatment. *See, e.g.*, *Venerus v. Avis Budget Car Rental, LLC*, 723 F. App'x 807 (11th Cir. 2018) (under abuse of discretion standard, reversing the denial of class certification and holding commonality was satisfied in FDUTPA case where car rental company failed to purchase the insurance that it promised despite the fact that the language in each rental contract differed; common question was whether rental company breached a duty by failing to purchase insurance); *Carriuola v. General Motors Company*, 823 F.3d 977, 984-986 (11th Cir. 2016) (common question as to whether inaccurate vehicle window sticker was objectively deceptive); *Brown v. SCI Funeral Services of Florida, Inc.*, 212 F.R.D. 602, 604 (S.D. Fla. 2003) (commonality found where pre-printed form lacked statutorily required financial disclosures).

In sum, this is a prisoners' civil rights action challenging one standardized course of conduct that has caused all class members to suffer the same constitutional injury. It presents several common questions of law and fact that are susceptible to class-wide proof and to which a class proceeding will generate common answers. The commonality requirement is satisfied.

**C. Typicality – Rule 23(a)(3).**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Although commonality and typicality overlap, *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278-79 (11th Cir. 2000), the focus of typicality is whether the class representative's interests are sufficiently aligned with those of the class members to stand in their shoes for purposes of the litigation. *Vega,* 564 F.3d at 1275*; see also Busby v. JRHBW Realty, Inc.,* 513 F.3d 1314, 1322 (11th Cir. 2008) ("A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)."). Further, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Checking Account Overdraft Litig*., 275 F.R.D. at 674. Indeed, the "typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members," as long as the named representatives' claims share "the same essential characteristics as the claims of the class at large." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985) (citations omitted); *see also Prado-Steiman,* 221 F.3d at 1279 n.14.

In this case, the claims, legal theories, interest, and suffered injury of Mr. Demler and the proposed class are identical. Mr. Demler and all other members of

the proposed class have been, and currently remain, affected by the Confiscation Policy in the same way.  Mr. Demler purchased a digital media player through the FDOC's Digital Media Player Program, purchased media files, and then was forced by the FDOC to surrender his media player and lost access to all of his media files because of the FDOC's Confiscation Policy.  This experience mirrors that of each class member.

Similarly, Mr. Demler's claim is based on the same legal theory as the claims of the class members—that the confiscation and forced surrender of his digital media player and files amounts to a violation of the Takings Clause of the Fifth Amendment and a violation of the Due Process Clause of the Fourteenth Amendment.  His claims are therefore "reasonably co-extensive" with those of the class members, and they share the same "essential characteristics" as the claims of the class at large.  Plaintiff, therefore, satisfies the typicality requirement.

**D. Adequacy of Representation – Rule 23(a)(4).**

The fourth element of the Rule 23(a) analysis requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement "involves questions [1] of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation, and [2] of whether plaintiffs have interests antagonistic to

those of the rest of the class." *Griffin v. Carlin,* 755 F.2d 1516, 1533 (11th Cir. 1985). These criteria are satisfied here.

Regarding the first prong, Plaintiffs are represented by attorneys from the Florida Justice Institute (FJI), a nonprofit civil rights organization, and the Social Justice Law Collective (SJLC). FJI and SJLC attorneys have extensive experience in class action cases involving federal civil rights claims for prisoners. *See, e.g., Hoffer v. Jones,* 323 F.R.D. 694, 699 (N.D. Fla. 2017) (appointing FJI as class counsel for prisoner class challenging medical treatment for Hepatitis C); *Copeland v. Jones*, No. 4:15-CV-00452-RH/CAS at ECF 78 (appointing FJI as class counsel for class of prisoners with hernias); *Underwood v. Manfre*, No. 3:13-CV-192-J-34PDB, 2014 WL 67644, at *8 (M.D. Fla. Jan. 8, 2014) (appointing FJI and ACLU as class counsel for class of jail correspondents); *Hamilton v. Hall,* No. 3:10 cv 355, 2011 WL 2161139 (N.D. Fla. May 26, 2011) (appointing FJI and ACLU as class counsel for class of jail inmates); *Raines v. Florida*, 987 F. Supp. 1416, 1420 (N.D. Fla. 1997) ("Counsel for Plaintiffs [FJI] has spent many years litigating questions concerning prison conditions, and his advocacy has always been of the highest quality."); *Lawson v. Wainwright*, 108 F.R.D. 450, 457 (S.D. Fla. 1986) ("In the instant case, this Court has no doubt that Plaintiff is represented by competent, diligent counsel [from FJI]. The Court file reflects that Plaintiff and his counsel will zealously pursue the interests of the class."); *Jackson v. Ash*, No.

13-cv-2504-EFM, 2014 U.S. Dist. LEXIS 38805, at *23 (D. Kan. Mar. 25, 2014)

("the Court is satisfied that Plaintiffs' attorneys [from SJLC and the ACLU] meet

the criteria of Rule 23(g) … and [have] significant experience in handling class

actions involving jail and prison inmates"); *Ogden v. Figgins*, 315 F.R.D. 670, 675

(D. Kan. 2016) ("the proposed class attorneys [from SJLC and the ACLU] have

extensive experience in class action cases involving federal civil rights claims for

prisoners, and have the resources necessary to litigate this action."). Plaintiff's

counsel are qualified, experienced, and able to conduct this litigation.

The second prong merely requires that there be no major conflicts between

the proposed class representatives and the class. *See Valley Drug Co. v. Geneva*

*Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) ("[T]he existence of minor

conflicts alone will not defeat a party's claim to class certification: the conflict

must be a 'fundamental' one going to the specific issues in controversy."). That

requirement is easily satisfied, as the proposed class representative has no interest

antagonistic to or in conflict with the interests of the class members. Mr. Demler

and the proposed class share a common goal: a declaration that the enforcement of

the FDOC's Confiscation Policy is unconstitutional, and injunctive relief that will

address the unlawful confiscation of their property. Moreover, Mr. Demler fully

understands his fiduciary role when serving as a representative of others in a class

action, is willing to contribute significant time to this matter, and has, and will

continue to, follow through with his obligations as class representative.  Demler Dec. (Ex. 1) at ¶ 39.  Thus, there is no likelihood of conflicts or antagonistic interests developing between the class representatives and the class.

## II. Class certification is appropriate under Rule 23(b)(2).

Certification is appropriate under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  A class should be certified under this rule when "a single injunction or declaratory judgment would provide relief to each member of the class."  *Wal-Mart Stores*, 564 U.S. at 360.  *See also Heffner v. Blue Cross & Blue Shield of Alabama, Inc*., 443 F.3d 1330, 1345 (11th Cir. 2006) ("Certification under Rule 23(b)(2) is proper when the relief sought necessarily affects all class members.").  Importantly, though, "[t]he rule does not require [the court] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010).  *See also Murray v. Auslander*, 244 F.3d 807, 810 (11th Cir. 2001) (affirming (b)(2) certification of all individuals with developmental disabilities in a Medicaid program, notwithstanding the need for individualized eligibility hearings).

Indeed, "the primary role of [Rule 23(b)(2)] has always been the certification of civil rights class actions." *Parsons*, 754 F.3d at 686. *See also Wal-Mart Stores,* 564 U.S. at 361 ("'[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples' of what (b)(2) is meant to capture." (citation omitted)); *Baby Neal for & by Kanter v. Casey,* 43 F.3d 48, 64 (3d Cir. 1994) ("The writers of Rule 23 intended that subsection (b)(2) foster institutional reform by facilitating suits that challenge widespread rights violations of people who are individually unable to vindicate their own rights.").

Here, a challenge to the FDOC's unconstitutional policy and practice of taking from prisoners their lawfully purchased digital files without just compensation, which uniformly harms a specific class of people, falls squarely within the ambit of Rule 23(b)(2).  The FDOC has acted pursuant to a standardized practice that applies generally to the class and the practice has been applied uniformly to all class members.  This practice has resulted in all class members having their property taken without just compensation and without any rational basis or proper motive.  Thus, this case is particularly appropriate for certification under Rule 23(b)(2).

**III. This Court should appoint the undersigned as class counsel.**

Rule 23(g)(1) provides that "unless a statute provides otherwise, a court that certifies a class must appoint class counsel." Rule 23(g)(1)(A) outlines the factors relevant to the appointment of class counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

All of these factors weigh in favor of appointing the undersigned as class counsel. Counsel from FJI and SJLC have already done substantial work investigating the facts and identifying the claims for the Plaintiff Class. Over the last several months, FJI and SJLC attorneys have collected documents, spoken to several class members and conducted extensive legal research. As already noted, FJI and SJLC have extensive experience handling complex class actions on behalf of incarcerated persons. In addition, undersigned counsel have sufficient resources that they will commit to representing the class.

Thus, Plaintiffs request that the Court appoint as class counsel the Florida Justice Institute, Inc. and the Social Justice Law Collective, PL, and specifically attorneys Dante P. Trevisani, Ray Taseff, Joshua Glickman, and Shawn Heller.

## Conclusion

The FDOC's actions have resulted in the confiscation of millions of dollars of lawfully purchased property from tens of thousands of prisoners, for which the FDOC has not paid just compensation, and which was taken without any rational basis or proper motive.  Rather than filing thousands of individual cases requiring repetitious litigation of identical issues, Plaintiff seeks the more efficient route of proceeding as a class, to obtain relief for all class members in one fell swoop.

WHEREFORE, Plaintiff respectfully requests that the Court:

1.  Certify this case as a class action with the following class definition: "All current FDOC prisoners whose digital media files were taken, or will be taken, pursuant to the Digital File Confiscation Policy[5]";

2.  Appoint Plaintiff William Demler as class representative;

3.  Appoint the Florida Justice Institute and the Social Justice Law Collective, and attorneys Dante P. Trevisani, Ray Taseff, Joshua Glickman, and Shawn Heller, as Class Counsel; and

4.  Grant further relief that may be just and proper.

---

[5] For purposes of the class definition, the Digital File Confiscation Policy refers to the FDOC policy implemented between 2017 and 2019 in which the FDOC required prisoners to surrender their digital media players and rescinded access to their digital files that were purchased under the previous Digital Media Player Program.

**Certificate of Attorney Conference.** Pursuant to N.D. Fla. Local Rule 7.1(B) and (C), Plaintiff's counsel has conferred with counsel for the Defendant, and is authorized to state that the Defendant opposes the granting of this Motion.

**Certificate of Word Limit.** Pursuant to N.D. Fla. Local Rule 7.1(F), this motion contains 4,993 words.

Respectfully submitted,

Dante P. Trevisani, Esq.
Fla. Bar No. 72912
*DTrevisani@FloridaJusticeInstitute.org*
Ray Taseff, Esq.
Fla. Bar No. 352500
*RTaseff@FloridaJusticeInstitute.org*

FLORIDA JUSTICE INSTITUTE, INC.
3750 Miami Tower
100 S.E. Second Street
Miami, Florida 33131
Tel: 305.358.2081
Fax: 305.358.0910

Shawn A. Heller, Esq.
Florida Bar No. 46346
shawn@sjlawcollective.com
Joshua A. Glickman, Esq.
Florida Bar No. 43994
josh@sjlcollective.com

Social Justice Law Collective, PL
974 Howard Avenue
Dunedin, Florida 34698
Tel: 202-709-5744

*Attorneys for the Plaintiff*

By:   *s/Dante Trevisani*

Dante Trevisani, Esq.


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed today, June 3, 2019, the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all persons registered to receive electronic notifications for this case, including all opposing counsel.


By:   *s/Dante Trevisani*

Dante Trevisani, Esq.