# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

WILLIAM DEMLER,

    Plaintiff,

v.                                    CASE NO. 4:19cv94-RH-GRJ

MARK S. INCH, in his official capacity
as Secretary of the Florida Department of
Corrections,

    Defendant.

_____/

## ORDER DENYING CLASS CERTIFICATION
## AND DENYING SUMMARY JUDGMENT

This case arises from a policy change in the Florida Department of Corrections. Inmates bought media players and paid to permanently download music, with the Department's full approval, but the policy change prevents the inmates from listening to the music. The plaintiff is an inmate who has moved to certify a class of inmates who downloaded music. The defendant Secretary of the Department has moved for summary judgment on the merits. This order denies both the motion to certify a class and the motion for summary judgment.

I

The plaintiff William Demler paid to acquire a media player and to download numerous songs for play while incarcerated. The seller was Keefe Commissary Network, LLC, which did business as Access Corrections. Keefe entered into these transactions with the full approval of the Department of Corrections, which apparently received a percentage of the sales price on each transaction. Answer, ECF No. 42 at 2-3 ¶ 3. In state-court litigation, the Department apparently described Keefe as its "partner" in this enterprise. *See* ECF No. 56-2 at 2.

In the written "terms of sale" that the Department says were provided to inmates, Keefe described the transactions as "Permanent Downloads," said Keefe could change the terms in its sole discretion, and said any changes would "apply to any purchases made after such changes are posted." ECF No. 56-1 at 1. The terms said Keefe could block access to a Permanent Download but that if Keefe did so, the inmate's account would be credited. *Id*. at 2. The terms said the Department could block access to "one or more" Permanent Downloads with no resulting credit to an inmate's account. *Id*. The terms did not say Keefe or the Department could entirely abandon the program or could require inmates to surrender their media players.

Mr. Demler alleges he paid for downloads based on representations attributable to the Department that he would be able to listen to the downloads during his entire tenure in the Department. The record does not establish one way or the other whether any such representations were in fact made.

The Department announced a policy change requiring inmates to surrender their media players but allowing the media players to be sent to relatives or others outside Department facilities. The Department entered into a replacement program with a different vendor using more advanced technology. The Department offered each inmate with an active Keefe media player a substitute, upgraded media player with the new vendor. And the Department offered each such inmate an allowance to pay for downloads compatible with the new player. Keefe downloads cannot be played on the new, upgraded media players, so under the Department's new policy, an inmate cannot access any "Permanent Download" purchased from Keefe.

Mr. Demler filed this action against the Department's Secretary in his official capacity. For convenience, this order uses "the Department" to refer to the Department, the Secretary, or both. Mr. Demler asserts claims under 42 U.S.C. § 1983 and the Due Process and Takings Clauses of the United States Constitution. He demands injunctive relief but not an award of damages—an omission that makes sense because the Department would have Eleventh Amendment immunity from any damages claim. Mr. Demler has not named Keefe as a defendant.

Mr. Demler has moved to certify a class of all Department inmates who will be unable to access their downloads because of the new policy. The Department has moved for summary judgment, asserting that denying access to the downloads is constitutional. The Department does not assert, as a basis for summary judgment, that no misrepresentations were made.

II

Federal Rule of Civil Procedure 23 governs class certification. The party who moves to certify a class has the burden of establishing that the Rule 23 elements are met. *See, e.g.*, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). The Rule 23(a) elements are commonly referred to as "numerosity, commonality, typicality, and adequacy of representation." *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1190 (11th Cir. 2009) (*quoting Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187-88 (11th Cir. 2003)).

Mr. Demler's class-certification motion fails on numerosity. A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[W]hile there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.' " *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). "[A] plaintiff need not show the precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983).

Mr. Demler submitted a list of 19,386 inmates who possessed a Keefe media player as part of this program. Some of these inmates have been released, but there are surely still thousands of inmates impacted by the policy change. Even so, many—probably most—cannot present the same claim as Mr. Demler. For an inmate who will receive an upgraded media player and credits that will allow acquisition of as many or more downloads than previously owned, any constitutional claim is almost surely unfounded. And even if not unfounded, any such claim is much different from Mr. Demler's claim, making Mr. Demler's claim not typical and Mr. Demler not an adequate representative.

In short, the Department's policy change, when coupled with the replacement media players and credits available to affected inmates, will make some inmates winners and some losers. The record gives no information at all on the number in each category. A class cannot properly be certified unless there are enough losers to meet the numerosity requirement. And while one might reasonably guess that the number is sufficient, a district court cannot properly certify a class based on such a guess. *See, e.g.*, *Vega*, 564 F.3d at 1267-68 (holding the district court erred in assuming numerosity for a class of Florida members based only on the large number of nationwide members).

III

The Department's summary-judgment motion is based on the proposition that correctional authorities can properly require inmates to relinquish possession of property they were previously allowed to possess. Thus, the Department says, inmates can be required to send property out of a facility to relatives or other custodians. The proposition is unassailable as far as it goes, and not surprisingly, the Department cites a number of cases so holding. *See, e.g.*, *Nev. Dep't of Corr. v. Green*, 648 F.3d 1014, 1019-20 (9th Cir. 2011); *Searcy v. Simmons*, 299 F.3d 1220, 1229 (10th Cir. 2002); *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991); *Nev. Dep't of Corr. v. Cohen*, 581 F. Supp. 2d 1085, 1093-94 (D. Nev. 2008); *Pryor-El v. Kelly*, 892 F. Supp. 261, 270-71 (D.D.C. 1995); *Stringer v. DeRobertis*, 541 F. Supp. 605, 607-08 (N.D. Ill. 1982); *Sorrentino v. Godinez*, No. 12C6757, 2013 WL 5497244 at *4-7 (N.D. Ill. Oct. 3, 2013).

But the Department's motion ignores a critical part of Mr. Demler's claim. The media player and downloads were not just property that Mr. Demler acquired on his own. Here the Department participated in sale of the property to inmates, represented to inmates that they would be allowed to use the property in the facility permanently, and took a cut of the sales price. Or so Mr. Demler asserts. None of the Department's cited cases involve similar facts.

The closest is *Sorrentino*. An Illinois facility allowed inmates to buy typewriters and second fans from the commissary but then changed course and prohibited possession of these items. The facility allowed inmates to send the prohibited items to family members or others outside the facility. The district court dismissed a proposed class action, concluding that this was not a taking that required just compensation.

*Sorrentino* is a nonbinding district court decision. But it is not on point anyway. There are three differences between Mr. Demler's claims and those involved in *Sorrentino* and the other cases cited by the Department.

First, Mr. Demler alleges the Department affirmatively represented that he would be able to possess his MP3 player and music permanently—or at least that Keefe made this representation and the Department is responsible for it.

Second, this case involves not just physical property—a typewriter, fan, or MP3 player, for example—but a license to play music that is not otherwise owned. When a typewriter is sent out of a facility, it is still owned and can be not only used but sold. The inmate can recover the value of the property. Downloaded music of the kind at issue, in contrast, cannot be sold; the right to use the music is all there is, and the right is not transferable. Takings law has long recognized the difference between depriving an owner of all, rather than just some, of a property's value. *See, e.g.*, *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560

U.S. 703, 713 (2010) (while discussing "general principles" of takings jurisprudence, stating that a taking may occur when the state "deprives [an owner] of all economically beneficial use of his property") (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992)).

Third, the record suggests that, contrary to its argument, the Department's new policy will not allow Mr. Demler to send all the disputed property to relatives or others outside the facility. *See* Demler Decl., ECF No. 40-1 at 7; *see also* Compl., ECF No. 1 at 14. The MP3 player stores some of Mr. Demler's purchased music. But the MP3 player's capacity is limited. Some of Mr. Demler's purchased music is stored not on the MP3 player but on the cloud. Only Mr. Demler can access that music. Under the Department's new policy, the music on the cloud is gone—not available to Mr. Demler or anyone else. Taking Mr. Demler's interest in purchased music he was told would be permanently available, without just compensation, if that is what occurred, may indeed be unconstitutional. The Department has cited no authority to the contrary.

To be sure, the Department denies anything was misrepresented. But the Department has not presented evidence on this and has not sought summary judgment on this basis. At least to this point, whether the Department made or is otherwise responsible for misrepresentations as alleged must be viewed as a genuinely disputed material fact. The terms of sale, if Mr. Demler agreed to them,

may authorize what the Department proposes to do. But the record does not establish whether the terms are binding on Mr. Demler, nor does the record shed any additional light on whether the terms mean what the Department says they mean.

## IV

For these reasons,

IT IS ORDERED:

1. The plaintiff's class-certification motion, ECF No. 40, is denied.

2. The defendant's summary-judgment motion, ECF No. 54, is denied.

3. The plaintiff's motion to defer a summary-judgment ruling or to extend the deadline to respond, ECF No. 58, is denied as moot.

SO ORDERED on September 25, 2019.

s/Robert L. Hinkle<br>
United States District Judge