UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
Tallahassee Division

WILLIAM DEMLER, individually and
on behalf of a Class of persons similarly situated,

    Plaintiffs,

v.                                                                      Case No.  4:19-cv-00094-RH

MARK S. INCH, in his
official capacity as Secretary of the
Florida Department Corrections,

    Defendant.
_____

**PLAINTIFF'S REPLY TO DEFENDANT MARK S. INCH'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO ALTER OR AMEND ORDER DENYING CLASS CERTIFICATION AND <u>DENYING SUMMARY JUDGMENT</u>**

Plaintiff, pursuant to this Court's Order, ECF No. 79, hereby files this Reply in support of his Motion to Alter or Amend Order Denying Class Certification and Denying Summary Judgment, ECF No. 71 ("Motion"), in order to respond to new facts and argument raised in Defendant's Response in opposition to Plaintiff's Motion, ECF No. 76 ("Response").

## <u>INTRODUCTION</u>

Before addressing Defendant's arguments, it is important to note that this Court denied Plaintiff's prior attempt at class certification in this matter for one

reason: Because the proposed class, as initially defined by Plaintiff, was comprised of both "inmate[] winners" and "[inmate] losers." ECF No. 64 at 5. The "winners" being those incarcerated persons who have already been provided with credits sufficient to replace as many or more songs than they had obtained under the Digital Media Player Program; while the "losers," like Mr. Demler, being those who have been provided with credits insufficient to replace the number of songs they had obtained under the Digital Media Player Program. *See id*.

In its Response, Defendant simply ignores this issue, and notably does not dispute that Mr. Demler has now (1) successfully identified exactly how many persons have been provided with credits insufficient to replace the number of songs they had obtained; and (2) proposed a revised class definition that successfully excludes all persons who have been provided with credits sufficient to replace the number of songs they had obtained, therefore directly addressing the Court's sole concern in denying certification.

While this Court can properly grant Mr. Demler's Motion on the basis of Defendant's failure to reasonably dispute that Mr. Demler's revised class definition successfully excludes all persons who have been provided with credits sufficient to replace the number of songs they had obtained, Mr. Demler will nonetheless briefly address each of Defendant's primary arguments below.

# ARGUMENT

### I. Whether Mr. Demler and the Putative Class Have an Ownership Interest in the Songs that the FDOC Took From Them is a Common Issue for Class-Wide Determination

Defendant's first argument is that the Court must first determine the merits of Mr. Demler and the putative class's claims before the class can be certified. *See* ECF No. 76 at 4 ("[T]he court must [first] probe behind the pleadings and look at the merits of Mr. Demler's claim … [t]his would necessitate an analysis as to whether Mr. Demler, and any putative class members, have an ownership interest in the digital music files, and if so, whether the digital music files were taken without providing just compensation.").

However, this position runs contrary to the very function, purpose, and history behind class action litigation. *See Williams v. Chesapeake La., Inc.*, No. 10-1906, 2013 U.S. Dist. LEXIS 34778, at *23 n.2 (W.D. La. Mar. 11, 2013) ("It is true that when ruling on a motion to certify class, the court must not consider the merits of the claim.") (citations omitted). Whether Mr. Demler and the putative class members have had their property unconstitutionally taken by Defendant is the ultimate question asserted by this litigation, and need not be answered at the certification stage. *See id.* Although in certain situations, a court may take a "peek at the merits" of a claim when applying the Rule 23 analysis, "'this peek [should] be limited to those aspects of the merits that affect the decisions essential under

Rule 23.'" *Bess v. Ocwen Loan Servicing, LLC*, No. C15-5020 BHS, 2019 U.S. Dist. LEXIS 148952, at *4 (W.D. Wash. June 28, 2019) (quoting *Conn. Ret. Plans & Tr. Funds v. Amgen Inc.*, 660 F.3d 1170, 1176 (9th Cir. 2011), *aff'd*, 568 U.S. 455, (2013) (internal citations omitted)).[1]

Here, when peeked at, it is apparent that Mr. Demler's claims are clearly appropriate for class-wide determination. Defendant's action in confiscating all incarcerated persons' digital music files offers no discretion and has been applied to Mr. Demler and all members of the putative class uniformly. *See* Order, ECF No. 64 at 3 ("The Department announced a policy change requiring inmates to surrender their media players but allowing the media players to be sent to relatives or others outside Department facilities."). The issues raised by Defendant – whether Mr. Demler and the proposed class members have an ownership interest in the digital music files, and if so, whether the digital music files were taken without providing just compensation – are common to Mr. Demler and all members of the proposed class, and are appropriately addressed in a class-wide manner.

---

[1] Defendant's reliance on *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51, 131 S. Ct. 2541, 2551-52 (2011) is misplaced.  While *Wal-Mart* does state that a Rule 23 analysis often involves some overlap with the merits of Plaintiff's underlying claim (the aforementioned "peek"), it does not require the Court to make determinations as to the merits of Plaintiff or the putative class's claims.

### II. Application of the "TERMS" Does Not Defeat Typicality and the Fact that Certain Class Members Have Filed Lawsuits Regarding the Same Underlying Conduct Does not Make Mr. Demler's Claims Atypical

Defendant argues that Mr. Demler's "[c]laims and defenses as to application of the [Access Corrections Media Program Terms of Sale for Permanent Downloads ("TERMS")] is not [t]ypical of the Class." ECF No. 76 at 5. Essentially, Defendant first argues that the determination of whether the TERMS apply to the Defendant's decision to confiscate all FDOC inmates' digital media files is a "critical component" in determining "whether the digital music files are property protected by the Fifth Amendment." *Id*. at 6. Defendant then argues that because some of the proposed class members have filed near-identical litigation in which they may have "acknowledged receipt of the TERMS," or "acknowledge[d] application of the TERMS," – while Mr. Demler has "disputed the applicability of the TERMS," – that Mr. Demler's "claims and defenses" are not typical of the claims or defenses of the class. *Id*. at 6-8.

Defendant's argument fails for several reasons. First, neither Mr. Demler nor the other plaintiffs base their constitutional claims on the TERMS. Indeed, even a cursory analysis of the legal claims brought by the other incarcerated plaintiffs demonstrates that typicality is in fact supported by the existence of these near-identical legal claims. While Defendant states without support that Mr. Rodriguez and Mr. Funk have "polarizing legal theories" when compared to Mr.

Demler's, a closer inspection reveals that the opposite is actually the case.[2] While Mr. Rodriguez and Mr. Funk do use the TERMS to support one of their nine counts—specifically, their breach of contract count against Keefe (Access) – this count has nothing to do with Mr. Rodriguez and Mr. Funk's two claims against the Defendant, which are near verbatim recitals of Mr. Demler's claims. As such, if anything, Mr. Rodriguez and Mr. Funk's Second Amended Complaint suggests that their legal theories with respect to the Defendant are identical, not "polarizing," and certainly pose no bar to certification. ECF No. 76 at 8.

Regardless of how these incarcerated plaintiffs phrase the applicability of the TERMS, the specific conduct complained of – the FDOC's action in confiscating all prisoners' digital music files – is identical between them, and it is well-settled that commonality and typicality are established when a plaintiff demonstrates that class members allege claims stemming from uniform conduct and under a common core of facts, even when slightly different legal theories may be present. *See Friedman v. Cal State Emples. Ass'n*, 2000 U.S. Dist. LEXIS 7049, at *10 (E.D. Cal. 2000) ("Commonality is satisfied when there are underlying facts … common throughout the class even if the common facts support

---

[2] Defendant also raises distinctions in legal theories raised by *pro se* plaintiffs Joshua Whitaker and George Mendoza. While Defendant notes that they "use the TERMS as a basis for their claims," it is difficult, if not impossible to ascertain to what extent these plaintiffs may have differing legal theories than Mr. Demler with respect to the applicability of the Terms, and Defendant provides no support for its bare assertion that they rely on them to any degree. Nonetheless, as stated above, such differences would not operate to defeat certification.

different legal theories"); *Moreno v. Autozone, Inc.*, 251 F.R.D. 417, 421 (N.D. Cal. 2008) ("Plaintiffs may demonstrate commonality by showing that class members .. share a common core of facts [even if they] base their claims for relief on different legal theories."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998) (holding that commonality is satisfied where class members' claims "stem from the same source," even though they "may possess different avenues of redress.").[3]

Moreover, as demonstrated by Defendant's previously denied Motion for Summary Judgment, any application of the TERMS to this matter is relevant only as a defense by Defendant to Mr. Demler's claims.  *See* ECF No. 55 at 28-34 ("DOC is Entitled to Summary Judgment Based Upon the Terms of the Digital Music Player Program").  It is axiomatic, however, that the availability of certain defenses against members of a proposed class does not render a class representative's claim atypical.  *See, e.g., Ketchum v. Sonoco, Inc.*, 217 F.R.D. 354, 357-58 (E.D. Pa. 2003) ("[W]here the representative plaintiff and the other members of the class share an interest in prevailing on similar legal claims … the availability of certain defenses against a class representative may not render his or

---

[3] In a footnote, Defendant re-asserts its summary judgment argument that the TERMS are binding on Mr. Demler and the putative class. *See* ECF 76 at 6, n. 2.  In so doing, Defendant asserts that Mr. Demler "predicate[s] the entirety of his claims on an alleged agency relationship between Keefe and DOC," and that Mr. Demler seeks to "make Keefe's acts/conduct pursuant to the Program binding upon DOC." *Id*.  This is a mischaracterization of Mr. Demler's claims.  Mr. Demler's Takings and Due Process claims are not based on any form of reliance, regardless of the author of the representations referenced in the Complaint.

her claims atypical."); *Bower v. Bunker Hill Co.*, 114 F.R.D. 587, 594 (E.D. Wash. 1986) ("Rule 23(a) does not indicate that possible defenses to an action are to be considered when determining the appropriateness of class certification.").

### III. Mr. Demler's Factual Circumstances Regarding the Deprivation of his Songs are Typical of the Putative Class's and Present Common Questions of Law and Fact

Defendant next asserts that certain factual differences between putative class members operate to defeat certification, namely, that (1) some inmates purchased a 4 GB digital media players, while others purchased a 8 GB digital media player; and (2) there are variances with respect to the current location of the songs that are no longer available to Mr. Demler and the putative class. *See* ECF No. 76 at 8-9, 13-14. These arguments do not defeat certification.

First, Mr. Demler notes that his claims in this matter do not involve Defendant's decision to confiscate Mr. Demler's or any inmate's digital media *player*, and instead only involve the confiscation of digital media *files* without just compensation. *See* Complaint, ECF No. 1. As such, Defendant's argument that the proposed class cannot be certified because some inmates purchased an 8 GB player while others purchased a 4 GB player is entirely without merit. *See* ECF No. 76 at 9-10.

More importantly, Mr. Demler's claims rest on the fact that Defendant's actions resulted in the permanent deprivation of Mr. Demler and the putative

-8-

class's access to the songs *while incarcerated*. The singular question presented to the Court is whether that deprivation establishes the constitutional violations asserted in the Complaint. It is undisputed that every single incarcerated program participant suffered from this deprivation, and it therefore makes no difference for class certification purposes where the songs that are no longer accessible to Mr. Demler and the putative class are currently located. *See* ECF No. 55 at 5 (wherein DOC implicitly acknowledges as an undisputed fact that Mr. Demler and the putative class were not provided with the option to keep, while incarcerated, the songs purchased through the Digital Media Player Program or transfer the songs to the Multimedia Tablet Program). As such, there are no factual differences between Mr. Demler and any other member of the putative class with respect to the only fact that matters for the question presented – that the Defendant instituted a policy that deprives Mr. Demler and the proposed class of access to the songs they purchased through the Digital Media Player Program while incarcerated, and whether that deprivation rises to level of the constitutional violations asserted.

Moreover, to the extent that it may be relevant, the record at this point contains little information as to what happened to the putative class member's songs. Even if it did, these factual differences are not relevant to the claims or the question presented, and therefore are not a bar to certification. *See e.g., Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 577 (M.D. Fla. 2006) ("'factual

differences among the claims of the putative class members do not defeat certification.'") (quoting *Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004), *abrogated on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 126 S. Ct. 1195, 163 L. Ed. 2d 1053 (2006)); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 693 (S.D. Fla. 2014) (citations omitted); *Hoffer v. Jones*, 323 F.R.D. 694, 698 (N.D. Fla. 2017) (citations omitted). [4]

### III. The Court Has the Power and Authority to Avoid the Potential Windfall Defendant Asserts Will Result if the Class is Certified

Finally, Defendant argues that because Mr. Demler is seeking the restoration of the songs that were taken from him and the putative class, if Mr. Demler prevails, certain inmates could receive a "windfall," because Mr. Demler and other prevailing class members have already been provided with credits sufficient to replace 75 songs, and could therefore ostensibly receive duplicate credits for those 75 songs. *See* ECF No. 76 at 19.

However, "'district courts whose equity powers have been properly invoked indeed have discretion in fashioning injunctive relief.'" *Cooper v. United States*

---

[4] In the Court's Order, it notes that some of Mr. Demler's music was stored only on the Reorder Manager, and, as a result, it is "gone—not available to Mr. Demler or anyone else." ECF No. 64 at 8. As a point of clarification, Mr. Demler notes that it is still currently unknown whether all of his music is currently stored on his media player, or whether some of his songs are only on the Reorder Manager. Although Mr. Demler's initial Motion for Class Certification noted that "[p]ursuant to the Confiscation Policy, the FDOC then cut off Mr. Demler's access to the files in his cloud-based library in October 2017," Mr. Demler did not intend to suggest that he had songs stored only in the Reorder Manager, but instead made that statement to explain the timeline of Defendant's implementation of the confiscation policy being challenged.

*Postal Serv.*, 245 F.R.D. 60, 64 (D. Conn. 2007) (quoting *U.S. v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 495, (2001)) (citing *Forschner Group, Inc. v. Arrow Trading Co., Inc.*, 124 F.3d 402, 406 (2d Cir. 1997) ("A district court has a wide range of discretion in framing an injunction in terms it deems reasonable to prevent wrongful conduct.").

As such, the Court has broad discretion to fashion any injunctive relief to avoid any "windfall," if it chooses, and there are a multitude of ways for the Court to do so. *See id.* For example, the Court could order the restoration of all of the taken songs and give the Defendant the option to elect not to restore 75 of the songs that were taken,[5] or permit Defendant the option of requiring that the putative class members delete 75 songs once restored, or reduce the number of song credits provided by 75, or permit Defendant to rescind the credits provided prior to final judgment. Courts routinely exercise this discretion to address issues like this, and it will not be difficult for the Court to address this issue to the extent the Court feels as though this purported windfall is unjust or inequitable.[6]

**Certificate of Word Limit.** Pursuant to N.D. Fla. Local Rule 7.1(F), this motion contains 2,740 words.

---

[5] In the event that additional credits are provided or other factual changes render it appropriate, the number of songs can be modified to reflect those changes.

[6] The Court may determine that the "windfall" is not a windfall at all, but rather, serves to better restore the equities, given that Mr. Demler and the putative class have been deprived of songs that they lawfully purchased for a significant amount of time.

Respectfully submitted,

Dante P. Trevisani, Esq.
Fla. Bar No. 72912
*DTrevisani@FloridaJusticeInstitute.org*
Ray Taseff, Esq.
Fla. Bar No. 352500
*RTaseff@FloridaJusticeInstitute.org*

FLORIDA JUSTICE INSTITUTE, INC.
3750 Miami Tower
100 S.E. Second Street
Miami, Florida 33131
Tel:  305.358.2081
Fax:  305.358.0910

Shawn A. Heller, Esq.
Florida Bar No. 46346
shawn@sjlawcollective.com
Joshua A. Glickman, Esq.
Florida Bar No. 43994
josh@sjlcollective.com

Social Justice Law Collective, PL
974 Howard Avenue
Dunedin, Florida 34698
Tel:  202-709-5744

*Attorneys for the Plaintiff*

By:   s/Shawn A. Heller
         Shawn A. Heller, Esq.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed today, December 2, 2019, the foregoing with the Clerk of the Court using the CM/ECF system, which will

-12-

send notification of such filing to all persons registered to receive electronic notifications for this case, including all opposing counsel.

> By: *s/Shawn A. Heller*
> Shawn A. Heller, Esq.