## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### Tallahassee Division

WILLIAM DEMLER, MICHAEL GISI and
WAYNE PULA, individually, and on behalf
of all others similarly situated,

      Plaintiffs,

vs.                                                    Case No. 4:19-cv-00094-RH/GRJ

MARK S. INCH, in his official capacity as
Secretary of the Florida Department of
Corrections,

      Defendant.

_____/

## JOINT MOTION FOR PRELIMINARY APPROVAL OF
## CLASS ACTION SETTLEMENT

### and incorporated

## MEMORANDUM OF LAW

Plaintiffs, William Demler, Wayne Pula, and Michael Gisi, individually and

on behalf of the Class (as defined by ECF No. 163), and Defendant Mark S. Inch,

in his official capacity as Secretary of the Florida Department of Corrections

("FDOC") (collectively referred to as the "Parties"), hereby move the Court for

entry of an order preliminarily approving the Class Action Settlement Agreement

("Agreement") (Exhibit 1)[1] and Notice of Proposed Settlement ("Notice") (Exhibit 1-C), agreed to by the Parties in this matter.[2]

## I.    BACKGROUND

Plaintiffs filed this action on February 19, 2019, seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, in order to obtain (1) a declaration that a policy of the FDOC with regard to digital music purchases made by inmates through the Digital Music Player Program allegedly resulted in an unconstitutional taking under the Fifth Amendment to the U.S. Constitution and a violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, and (2) an injunction restoring the Plaintiffs' ability to listen to the music previously purchased under the Digital Music Player Program while in prison.

Plaintiffs have alleged that for years, the FDOC operated a Digital Music Player Program under which the FDOC and Keefe Commissary Network sold millions of dollars in digital music to FDOC prisoners, with the FDOC receiving a commission on every song sold.  When the FDOC ended its contract with Keefe and entered a new contract with JPay, Plaintiffs allege that the FDOC implemented

---

[1] All defined terms in the Agreement shall have the same meaning herein.
[2] Due to delays caused primarily by the COVID-19 pandemic, the Parties have not yet received executed signature pages of the Agreement by all three individual Plaintiffs, who are all incarcerated in different FDOC facilities throughout the state.  However, the Plaintiffs have reviewed and discussed the Agreement's provisions with Class Counsel and have authorized the filing of this Motion and the attached unexecuted Agreement.  As soon as Class Counsel has received executed signature pages back from all three individual Plaintiffs, the Parties will promptly file a fully executed Agreement with the Court.

a statewide policy under which the FDOC confiscated all songs that had been lawfully purchased under the Digital Music Player Program, and rescinded Plaintiffs' ability to listen to their purchased music while in prison, without just compensation.

Defendant FDOC has expressly denied liability in this matter, that Plaintiffs have standing to raise the claims at issue, and that the Court has subject matter jurisdiction over the claims asserted.  Among the various defenses asserted by FDOC, FDOC has alleged that the music licenses purchased by Plaintiffs do not give rise to any constitutionally protected property interest, an issue that FDOC asserts has been unanimously recognized by judicial decisions up to and including the United States Supreme Court, and as a result, FDOC contends that Plaintiffs lack standing to bring the claims at issue.  Further, FDOC has alleged that at all time material hereto, Plaintiffs were never deprived ownership of the songs, and consequently there could not have been any constitutional violations resulting from the conduct attributed to FDOC.  In addition, FDOC has alleged that the Terms and Conditions governing the purchase of digital music through the Digital Music Player Program authorized the conduct which gives rise to the claims asserted.

As such, the litigation has been intensive and hard-fought, and has included extensive discovery over the course of a full year, including the preparation and responses to multiple requests for production of documents, requests for

admissions and interrogatories; numerous depositions of FDOC employees, prisoners, and Defendant FDOC pursuant to Rule 30(b)(6); multiple briefed and litigated discovery disputes that were heard by the Court, as well as fully briefed dispositive motions by both Parties.

Against this contentious backdrop, the Parties simultaneously engaged in arms' length negotiations for a comprehensive resolution of this litigation. These negotiations included a formal, all-day mediation in front of an experienced mediator well versed in the litigation and settlement of claims with the Defendant FDOC and the State of Florida on March 5, 2020, as well as more than a month of continuing negotiations between counsel with the assistance of the mediator.

As a result of these negotiations, the Parties have agreed to a resolution of all claims brought against the Defendant in this action, including the provision of 3,900,000 Settlement Credits to Class Members in order to restore their ability to listen to an agreed upon number of songs that were previously purchased under the Digital Music Player Program.

As set forth fully below, the Parties submit that the attached Agreement constitutes a fair, reasonable, and adequate resolution for the Plaintiffs, pursuant to Rule 23(e)(2), Federal Rules of Civil Procedure, and that the terms of the resolution were reached only after substantial litigation, discovery, and arms-length

4

negotiations between experienced counsel, and are in the best interests of the Parties and the public.

As such, the Parties request that the Court enter an order (1) granting preliminary approval of the proposed settlement as set forth in the attached Agreement; (2) preliminarily certifying the proposed settlement class pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure; (3) directing that members of the settlement class be given notice of the pendency of this action and the proposed settlement in the form and manner proposed by the Parties in the attached Agreement (Exhibit 1) and Notice (Exhibit 1-C); and (4) scheduling a hearing at which the Court will consider final approval of the settlement and entry of the attached Agreement.[3]

## II.   OUTLINE OF PROPOSED SETTLEMENT

### A.   The Class

The proposed settlement has been reached on behalf of the following Class, which has been certified by the Court pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure (ECF No. 163):

> All current Florida Department of Corrections prisoners whose digital media files were taken, or will be taken, pursuant to the Department's termination of the MP3 program (the "Digital Music Player

---

[3] A proposed preliminary order approving the Agreement and ordering the Notice to be transmitted to the Class, in the form and manner proposed by the Parties, is attached as Exhibit 1-A (proposed preliminary order), for the Court's convenience and consideration.

Program"), and who purchased more than 75 songs through that program.

**B.      Relief for the Class**

Defendant, solely for the purposes of settlement and without admitting or conceding any fault, wrongdoing, or liability, and in order to avoid the inconvenience and expense of further litigation, has agreed to restore the ability of each member of the Class to listen to a certain, agreed upon number of songs that were previously purchased under the Digital Music Player Program through the issuance of Settlement Credits, as set forth in the attached Agreement.

Specifically, in order to restore Class Members' ability to listen to such songs, Defendant has agreed to make the Settlement Credits (i.e. 3.9 million Tablet Media Credits) available to the Class on July 1, 2020.  The Settlement Credits will supplement the 100 Tablet Media Credits that have been previously issued, and one Tablet Media Credit will be issued from the Settlement Credits for each song in excess of 100 purchased under the Digital Music Player Program for a total Tablet Media Credits not to exceed 3,900,000.  To the extent there are Settlement Credits remaining after the foregoing distribution, those Tablet Media Credits will be distributed among all Class members on a *pro rata* basis based on the number of songs purchased under the Digital Music Player Program. The FDOC has also separately agreed to pay Class Counsel $150,000 in attorneys' fees, costs, and expenses.

6

Thus, the proposed settlement will result in each Class member being able to replace a certain, agreed upon number of songs that they had previously purchased under the Digital Music Player Program, and represents an excellent result for the Class.

The Parties note that these Settlement Credits are being provided for the sole purpose of satisfying Plaintiffs' and the Class' injunctive claims by reinstating the ability of inmates to listen to a certain, agreed upon number of songs that were previously purchased under the Digital Music Player Program by the Class.  As noted in the Agreement, Settlement Credits are not a settlement fund, currency or damages, and cannot be exchanged for currency.

**C.     Notice to the Class**

Pursuant to Rule 23(e)(1), Federal Rules of Civil Procedure, the Court may direct notice in a reasonable manner to all members of the Class who would be bound by the proposed resolution of this matter.  In satisfaction of this requirement, the Parties have agreed on the proposed wording of the Notice to members of the Class (Exhibit 1-C).

As set forth in the attached Agreement, Defendant FDOC, within fourteen (14) days of the Court's preliminary approval of the attached Notice, shall provide the Notice to the Class by posting a copy of the attached Notice (both the English and Spanish version) in a prominent area in every dormitory and law library of

every FDOC institution.  The Notice shall remain posted for sixty (60) days.  A copy of the Notice shall be provided individually to any inmate who is not housed in a common dormitory setting.  Notice shall also be provided on the FDOC website, in a publication or publications of FDOC's choosing that is/are made available to FDOC inmates, and, if technologically feasible to do so, on the currently permitted JPay Tablets in standard and accessible formats for Class members with disabilities.  The cost of providing such notice shall be borne by the FDOC.

### D.    Release of Claims

The attached Agreement is designed to fully release and indemnify the FDOC and the State of Florida from any and all claims raised in this action and all other claims (including all claims for violation of federal or state constitutional, statutory, regulatory, or common law), whether known or unknown, arising out of the Digital Music Confiscation Policy, that were or could have been raised, against the Defendant in this action, and to resolve Class Counsel's attorneys' fees and costs.

After the Effective Date, Plaintiffs and the Class agree that Defendant FDOC and the State of Florida are released from all Released Claims, and shall be indemnified by a Noticed Party for any and all Indemnified Claims, to the fullest extent permitted by Rule 23(b)(2), Federal Rule of Civil Procedure.

**E.      Liability**

Nothing contained in the attached Agreement or in any Order entered by the Court adopting this Agreement is or shall be construed as an admission by the Defendant of the truth of any allegations or the validity of any claim asserted in the Complaint, or of the Defendant's liability, and in fact Defendant denies same.

**F.      Costs, Expenses and Attorneys' Fees**

In settlement of all claims for attorneys' fees, taxable costs, and non-taxable litigation expenses incurred through the date of entry of the proposed Agreement, Defendant FDOC agrees to tender to Class Counsel the gross sum of ONE HUNDRED AND FIFTY THOUSAND DOLLARS ($150,000.00), via check made payable to the Social Justice Law Collective Trust Account (Fed. Tax ID No. 46-0961071) (the "Settlement Amount"), within thirty (30) days of the Effective Date.

The Parties agree that this Settlement Amount includes the resolution and payment in full of all of Plaintiffs' claims for reasonable attorneys' fees and costs. Class Counsel's attorneys' fees and costs is based upon an agreed upon amount for fees and costs as part of the amicable resolution of the pending litigation for which liability is in dispute, and shall be paid separately to Class Counsel by Defendant. There is no settlement fund, as damages are not being sought or provided, and therefore, Class Counsel's fees are not a percentage-of-fund calculation and will

not operate to reduce the value of the settlement benefit to the Class, but rather, represent a negotiated, discounted lodestar calculation designed to resolve Class Counsel's claim for attorneys' fees and costs pursuant to 42 U.S.C. § 1988, along with any other claims for attorneys' fees and costs Class Counsel may have.

### G.     Court Adoption

The attached Agreement is subject to and conditioned upon the Court's approval and entry of the attached Agreement.  In the event that the Court declines to approve or enter the attached Agreement, the Parties agree that the attached Agreement shall be null and void and without prejudice to the Parties' rights.

### III.    <u>PRELIMINARY COURT APPROVAL</u>

### A.     Proposed Terms of Settlement

Rule 23(e), Federal Rules of Civil Procedure, requires judicial approval for any compromise of claims brought on a class basis.  Review of a proposed class action settlement generally involves a two-step process:  preliminary approval and a fairness hearing.  *See Manual for Complex Litigation, Fourth*, § 21.632 (West 2004).  First, the court reviews the proposed terms of settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms.  *See id*.  "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class

representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citing *Manual for Complex Litigation, Third,* § 30.41 (West 1995)); *see also Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, *2 (S.D. Fla. 2010) ("Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason."). Approval of a proposed settlement is a matter within the broad discretion of the district court. *See Day v. Persels & Associates, LLC*, 29 F.3d 1309, 1326 (11th Cir. 2013) (A proposed settlement should be granted if the settlement is "fair, adequate, reasonable, and not the product of collusion."); *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983) (same).

Moreover, it is well established that there is an overriding public interest in settling and quieting litigation, particularly in the context of a class action. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)[4]; *see also Newberg on Class Actions* § 11:41, at 87 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In re U.S. Oil and Gas Litigation*, 967 F.2d 489, 493 (11th Cir. 1992) (."Public policy strongly favors the pretrial settlement of class action lawsuits.").

---

[4]   In *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted all decisions of the Fifth Circuit rendered prior to October 1, 1981, as binding precedent.

In furtherance of this public interest, in considering a proposed settlement, the trial court need not reach any ultimate conclusion on the substantive factual or legal issues of plaintiffs' claims. *See Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978) ("in considering the settlement, the court is entitled to rely upon the judgment of experienced counsel for the parties."). "We recognize that since the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the settlement hearing into a trial or a rehearsal of the trial; and that the court is concerned with the likelihood of success or failure and ought, therefore, to avoid any actual determination of the merits." *Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972) (citations omitted). Instead, the court's primary concern should be whether the proposed settlement is fair, reasonable and adequate. *See Cotton*, 559 F.2d at 1331.

The proposed settlement here, as set forth in the attached Agreement, is fair, reasonable and adequate. The attached Agreement is the product of extensive, arm's-length negotiations between experienced counsel, who have concluded that the proposed settlement strikes a reasonable balance between the constitutional rights of the Settlement Class, the concerns of Defendant correctional officials, and the attendant risks, costs, uncertainties and delays of litigation, and is in the best interests of their respective clients and the Class as a whole. *See Reed v. General*

12

*Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid.  Lawyers know their strengths and they know where the bones are buried."); *see also In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001) ("[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair.").

The attached Agreement constitutes an excellent result for the Class.  As noted above, Defendant FDOC has agreed to restore the ability of each member of the Class to listen to an agreed upon number of songs that were previously purchased under the Digital Music Player Program, through the issuance of Settlement Credits that can be used to purchase songs through the FDOC's Multimedia Tablet Program.  Specifically, Defendant FDOC has agreed to provide 3,900,000 Settlement Credits to the Class, in such a manner so that each Class member will be able to replace an agreed upon number of purchased songs under the Digital Music Player Program.  Moreover, because the settlement benefit to Class Members is of a purely injunctive nature, the amount that Defendant has agreed to pay to Class Counsel for their reasonable attorneys' fees and costs shall be paid separately by Defendant, and will not operate to reduce the value of the settlement benefit to the Class in any manner.

Finally, the proposed Agreement has no obvious deficiencies, and does not mandate preferential treatment to class representatives or segments of the class. *See Wm. Wrigley Jr. Co.*, 2010 WL 2401149 at *2. The proposed Agreement constitutes a complete resolution of all claims against Defendant FDOC by Plaintiffs and all members of the Class, involving all alleged violations of their Fifth and Fourteenth Amendment rights, and no member of the Class, including the named Plaintiffs, will receive any monetary payment or additional relief as part of the relief contained therein. As such, the settlement terms as set forth in the attached Agreement merit preliminary approval by this Court and submission to the Class for consideration.

**B.    Notice**

"If the court preliminarily approves the settlement, it must direct the preparation of notice of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing." *Manual for Complex Litigation, Fourth*, § 21.632-21.635 (West 2004); *see also* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement, voluntary dismissal, or compromise]."). The standard for the adequacy of a settlement notice in a class action is measured by reasonableness. *See Faught*, 2011 WL 5119115 at *4. "There are no rigid rules to determine whether a settlement notice to the class

satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005).

The attached Notice submitted by the Parties clearly meets this reasonableness standard in all respects.   The attached Notice (1) describes the nature, history, and status of the litigation; (2) sets forth a clear definition of the Class; (3) sets forth the basic terms of the proposed Agreement; (4) advises members of the Class of the method to object to the proposed Agreement, if desired; and (5) warns members of the Class of the consequences of not objecting to the proposed Agreement in the manner specified.

In addition, the proposed Notice provides contact information for Class Counsel, discloses the date, and time and place of the formal Fairness Hearing.

In granting preliminary settlement approval, the Court should also therefore approve the Parties' proposed form and method of providing notice to members of the Class, as set forth in the attached Notice.

WHEREFORE the Parties jointly request the Court's entry of an Order:

(1) granting preliminary approval of the proposed settlement as set forth in the attached Agreement (Exhibit 1);

(2) directing that members of the Class be given notice of the pendency of this action and the proposed settlement in the form and manner proposed by the Parties in the attached Agreement (Exhibit 1) and Notice (Exhibit 1-C); and

(3) scheduling a hearing at which the Court will consider final approval of the settlement and entry of the attached Agreement.

**Certificate of Word Limit.**  Pursuant to N.D. Fla. Local Rule 7.1(F), this motion contains 3,431 words.

Respectfully submitted this 14th day of May, 2020.

Dante P. Trevisani, Esq.
Fla. Bar No. 72912
*DTrevisani@FloridaJusticeInstitute.org*
Ray Taseff, Esq.
Fla. Bar No. 352500
*RTaseff@FloridaJusticeInstitute.org*

FLORIDA JUSTICE INSTITUTE, INC.
3750 Miami Tower
100 S.E. Second Street
Miami, Florida 33131
Tel:  305.358.2081
Fax:  305.358.0910

Shawn A. Heller, Esq.
Florida Bar No. 46346
shawn@sjlawcollective.com
Joshua A. Glickman, Esq.
Florida Bar No. 43994
josh@sjlcollective.com

Social Justice Law Collective, PL

974 Howard Avenue
Dunedin, Florida 34698
Tel:  202-709-5744

***Attorneys for the Plaintiffs***

By:  *s/Joshua A. Glickman*
      Joshua A. Glickman, Esq.


ASHLEY MOODY
ATTORNEY GENERAL

*/s/ Miguel A. Olivella, Jr.*
MIGUEL A. OLIVELLA, JR.
Senior Assistant Attorney General
Fla. Bar No. 253723
Office of the Attorney General
Complex Civil Litigation Division
The Capitol - PL 01
Tallahassee, FL 32399-1050
(850) 414-3817
Miguel.Olivella@myfloridalegal.com
***Attorney for Defendant***
***Mark S. Inch***


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed today, May 14, 2020, the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all persons registered to receive electronic notifications for this case, including all opposing counsel.


By:  *s/Joshua A. Glickman*
      Joshua A. Glickman, Esq.