**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**Tallahassee Division**

WILLIAM DEMLER and MICHAEL GISI,
individually and on behalf of
all others similarly situated,

     Plaintiffs,

vs.                                                        Case No. 4:19-cv-00094-RH/GRJ

MARK S. INCH, in his official capacity as
Secretary of the Florida Department of
Corrections,

     Defendant.

_____/

**JOINT MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT**

**and incorporated**

**MEMORANDUM OF LAW**

Plaintiffs, William Demler and Michael Gisi, individually and on behalf of

the Settlement Class (as defined by ECF 288), and Defendant Mark S. Inch, in his

official capacity as Secretary of the Florida Department of Corrections ("FDOC")

(collectively referred to as the "Parties"), hereby move the Court for final approval

and entry of the Class Action Settlement Agreement ("Agreement" attached as

1

Exhibit 1)[1], agreed to by the Parties in this matter and preliminarily approved by this Court.  In support thereof, the Parties state as follows:

## I.      SUMMARY OF THE LITIGATION

Plaintiffs filed this action in early 2019, seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, in order to obtain a declaration that a policy of the FDOC with regard to digital music purchases made by inmates through the Digital Music Player Program resulted in an unconstitutional taking under the Fifth Amendment to the U.S. Constitution and a violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, as well as an injunction restoring the Plaintiffs' ability to listen to the music previously purchased under the Digital Music Player Program while in prison.  *See* Declaration of Dante P. Trevisani at ¶ 4, attached as Exhibit 2 ("Trevisani Declaration").

Plaintiffs alleged that for years, the FDOC operated a Digital Music Player Program under which the FDOC and Keefe Commissary Network sold millions of dollars in digital music to FDOC prisoners, with the FDOC receiving a commission on every song sold.  *Id*. at ¶ 5.  When the FDOC ended its contract with Keefe and entered a new contract with JPay, Plaintiffs alleged that the FDOC implemented a statewide policy under which the FDOC confiscated all songs that had been lawfully purchased under the Digital Music Player Program, and

---

[1] All defined terms in the Agreement shall have the same meaning herein.

rescinded Plaintiffs' ability to listen to their purchased music while in prison, without just compensation. *Id*.

Defendant FDOC has expressly denied liability in this matter, that Plaintiffs have standing to raise the claims at issue, and that the Court has subject matter jurisdiction over the claims asserted. Among the various defenses asserted by FDOC, FDOC has alleged that the music licenses purchased by Plaintiffs do not give rise to any constitutionally protected property interest, and as a result, FDOC contends that Plaintiffs lack standing to bring the claims at issue. Further, FDOC has alleged that at all time material hereto, Plaintiffs were never deprived ownership of the songs, and consequently there could not have been any constitutional violations resulting from the conduct attributed to FDOC. In addition, FDOC has alleged that the Terms and Conditions governing the purchase of digital music through the Digital Music Player Program authorized the conduct which gives rise to the claims asserted.

As such, the litigation has been intensive and hard-fought, and has included extensive discovery over the course of a full year, including the preparation and responses to multiple requests for production of documents, requests for admissions and interrogatories; numerous depositions of FDOC employees, the plaintiffs, and Defendant FDOC pursuant to Rule 30(b)(6); multiple briefed and

litigated discovery disputes that were heard by the Court, as well as fully briefed dispositive motions by both Parties. *See* Trevisani Declaration at ¶ 6.

Against this contentious backdrop, the Parties simultaneously engaged in arms' length negotiations, attempting to reach a comprehensive resolution of this litigation. *Id*. at ¶ 7. These negotiations included a formal, all-day mediation in front of an experienced mediator well versed in the litigation and settlement of claims with the Defendant FDOC and the State of Florida on March 5, 2020, as well as more than a month of continuing negotiations between counsel with the assistance of the mediator. *Id*.

As a result of these negotiations, the Parties agreed to a resolution of all claims brought against the Defendant in this action, including the provision of 3,900,000 Settlement Credits to Class Members in order to restore their ability to listen to an agreed upon number of songs that were previously purchased under the Digital Music Player Program. *Id*. at ¶ 9.

After motions by the Parties, on May 26, 2020, this Court preliminarily approved the Agreement and authorized notice to the Settlement Class (ECF 170), which was defined as:

> All current Florida Department of Corrections prisoners whose digital media files were taken, or will be taken, pursuant to the Department's termination of the MP3 program (the "Digital Music Player Program"), and who purchased more than 75 songs through that program.

Subsequent to approval, the Parties provided notice of the pendency of the action and the proposed settlement to the Settlement Class. *See* Trevisani Declaration at ¶ 10. Specifically, the Court-approved Notice of Proposed Settlement (attached as Exhibit 1-C) was posted in a prominent area in every dormitory and law library of every FDOC institution for 60 days, and a copy of the Notice provided individually to any inmate who was not housed in a dormitory setting. *Id*. Further, among other steps taken to notify inmates of the proposed settlement, copies of the Notice were published on the FDOC's public website and were emailed to all incarcerated people who had a permitted JPay Tablet, in standard and accessible formats for Class members with disabilities (collectively, the "Initial Notice"). *Id*.

After the Initial Notice had been provided to the Settlement Class, FDOC directed its vendor to issue an additional 25 Tablet Media Credits to all currently incarcerated prisoners who had participated in the Digital Music Player Program, in accordance with a previously established contractual schedule. *Id*. at ¶ 11. Because this Court had previously found that prisoners who had been issued one Tablet Media Credit per song purchased through the Digital Music Player Program as a result of this previously established schedule had "suffered no loss,"[2] the

---

[2] *See* Order Certifying a Class (ECF 163) at p. 3 ("Prisoners who bought 75 or fewer songs have suffered no loss; the Department's replacement program incudes [75 Tablet Media Credits] that will allow those prisoners to replace the songs without cost.").

Parties jointly requested, and the Court certified, a revised Settlement Class on July 27, 2020, with the following Class Definition:

> All current Florida Department of Corrections prisoners whose digital media files were taken, or will be taken, pursuant to the Department's termination of the MP3 program (the "Digital Music Player Program"), and who purchased more than 100 songs through that program.

*See* ECF 288.

Additionally, after the Initial Notice had been provided to the Settlement Class and the initial, first round of settlement credit distribution of one Tablet Media Credit for every song over 100 previously purchased under the Digital Music Player Program had been distributed, a number of prisoners wrote to Class Counsel and filed documents with the Court indicating one of two potential problems: 1) they were not on the list containing the names of the Class members that was filed with the Court, despite purportedly meeting the Class Definition, and/or 2) they did not, but should have, received the 100 Tablet Media Credits that FDOC had previously directed its vendor to distribute. *See* Trevisani Declaration at ¶ 12.

Upon joint investigation by Defendant and Class Counsel, it was determined that an unknown but manageable number of Class members were inadvertently omitted from the list filed with the Court and also that some members of the Class had mistakenly not received the 100 Tablet Media Credits previously distributed by FDOC. *Id*. at ¶ 13. However, Defendant confirmed that it would be able to

verify through its vendors whether these additional prisoners met the Class definition and whether they received the 100 Tablet Media Credits, given the recordkeeping of its vendor, by checking their names and DC numbers individually. *Id*.

As such, the Court subsequently authorized Supplemental Notice (attached as Exhibit 3 hereto) to the Settlement Class on July 27, 2020, to be made in the same manner as the Initial Notice, and which requested potential Settlement Class members to submit a notice to a third-party administrator, no later than September 18, 2020, if they believed that they either had not received the previously distributed 100 Tablet Media Credits from the FDOC, or had not received the initial distribution of Settlement Credits pursuant to the Parties' Agreement.

The Parties received 2,582 notices from putative class members as a result of the Supplemental Notice. *Id*. at ¶ 15. Following the September 18th deadline, this list of persons was promptly provided by Class Counsel to Defendant, who is currently checking with its vendors to determine whether the listed persons should have received an initial distribution of credits. *Id*. That process is ongoing, and Class Counsel and Defendant are both working diligently with Defendant's third-party vendors to complete this supplemental distribution in as timely a manner as possible. While this process has not yet been completed, significant progress has been made such that most of the identified Settlement Class members should have

received an initial distribution of credits and if any have not, they will shortly receive the full benefits of the Agreement attached hereto pursuant to the joint effort of the Parties. After final approval is granted, if there are any remaining Settlement Credits after the first two distributions - and it is expected that there will be undistributed credits - a final *pro rata* distribution will be made by the Parties. *Id*. at ¶ 16.

As set forth more fully herein, the Agreement is exceedingly fair. Given Defendant's fact-specific licensing and constitutional arguments, Plaintiffs acknowledge that they faced complex and potentially significant hurdles at summary judgment, trial, and/or on appeal. Given these challenges, coupled with the ability and willingness of Defendant to continue its vigorous defense, the Agreement has provided certain recovery for the Settlement Class, and is in the best interests of the Settlement Class as a whole.

Finally, as further support for the reasonableness of the Agreement, this settlement was reached only after substantial litigation, discovery, and arms-length negotiations between experienced counsel, with the guidance and assistance of a well-respected mediator with significant experience in the litigation and settlement of claims with the Defendant FDOC and the State of Florida. As such, the Agreement strikes a reasonable balance between the certain benefit the Settlement Class has received under this settlement, the fact that Defendant will vigorously

oppose the claims asserted in the litigation if the settlement is not approved, and the attendant risks, costs, uncertainties, and delays of litigation.

The Parties agree that the Agreement constitutes a fair, reasonable, and adequate resolution for the Plaintiff and the Settlement Class, pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure, and the terms of the resolution, as set forth in the preliminarily approved Agreement, are in the best interests of the Parties. The Parties therefore request that the Court enter a Final Order and Judgment: (1) granting final approval of the Agreement; (2) certifying the Settlement Class as preliminarily approved by the Court; and (3) entering an Order and Final Judgment, and dismissal of the litigation.[3]

### SUMMARY OF SETTLEMENT AND NOTICE

#### A.    The Class

As more fully detailed above, the proposed settlement has been reached on behalf of the following Settlement Class, which has been certified by the Court pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure (ECF 288):

> All current Florida Department of Corrections prisoners whose digital media files were taken, or will be taken, pursuant to the Department's termination of the MP3 program (the "Digital Music Player Program"), and who purchased more than 100 songs through that program.

---

[3] A proposed final order approving settlement, in the form approved by the Parties, is attached for the Court's convenience and consideration as Exhibit 4.

**B.    Relief for the Class**

Defendant, solely for the purposes of settlement and without admitting or conceding any fault, wrongdoing, or liability, and in order to avoid the inconvenience and expense of further litigation, has agreed to restore the ability of each member of the Settlement Class to listen to a certain, agreed upon number of songs that were previously purchased under the Digital Music Player Program through the issuance of Settlement Credits, as set forth in the attached Agreement.

Specifically, in order to restore Class Members' ability to listen to such songs, Defendant has agreed to make the Settlement Credits (i.e., 3.9 million Tablet Media Credits) available to the Settlement Class, through three separate distributions, as described above.  These Settlement Credits will supplement the 100 Tablet Media Credits that have been previously issued pursuant to the FDOC's contractual arrangement, and one Tablet Media Credit will be issued from the Settlement Credits for each song in excess of 100 purchased under the Digital Music Player Program for a total Tablet Media Credits not to exceed 3,900,000, as a result of the Parties' Agreement.  To the extent there are Settlement Credits remaining after the first two distributions, those Tablet Media Credits will be distributed among all Class members on a *pro rata* basis based on the number of songs purchased under the Digital Music Player Program. The FDOC has also

10

separately agreed to pay Class Counsel $150,000 in attorneys' fees, costs, and expenses.

The Parties submit that this represents an excellent result for the Settlement Class. The Parties also note that these Settlement Credits are being provided for the sole purpose of satisfying Plaintiffs' and the Class' injunctive claims by reinstating the ability of inmates to listen to a certain, agreed upon number of songs that were previously purchased under the Digital Music Player Program by the Settlement Class. As noted in the Agreement, Settlement Credits are not a settlement fund, currency or damages, and cannot be exchanged for currency.

### C.     Notice to the Class

As described in full detail above, notice of the pendency of the action and the proposed settlement to the Settlement Class was provided on two separate occasions, in order to ensure that putative Settlement Class Members were fully apprised of all the details of the attached Agreement, as well as to ensure that all Settlement Class Members were correctly identified and provided the benefit resulting from the preliminarily approved settlement.

First, the Initial Notice (attached as Exhibit 1-C) was posted in a prominent area in every dormitory and law library of every FDOC institution for 60 days, and a copy of the Notice provided individually to any inmate who was not housed in a dormitory setting. *See* Trevisani Declaration at ¶ 10. Further, among other steps,

11

copies of the Notice were published on the FDOC's public website and on the permitted JPay Tablets in standard and accessible formats for Class members with disabilities. *Id.*

Following this Initial Notice, as detailed above, the Parties provided Supplemental Notice to the Settlement Class (attached as Exhibit 3), which allowed putative Class Members to notify the Parties if they believed that they either had not received the previously distributed 100 Tablet Media Credits from the FDOC, or had not received the initial distribution of Settlement Credits pursuant to the Parties' Agreement. *Id.* at ¶ 14. The Parties received 2,582 notices from putative class members as a result of their Supplemental Notice efforts. *Id.* at ¶ 15.

### D.   Release of Claims

Subject to final approval by this Court, the Parties have agreed that this Agreement is designed to fully release the FDOC and the State of Florida from any and all claims raised in this action and all other claims (including all claims for violation of federal or state constitutional, statutory, regulatory, or common law), whether known or unknown, arising out of the Digital Music Confiscation Policy, that were or could have been raised against the Defendant in this action, and to resolve Class Counsel's attorneys' fees and costs.

12

### E.    Costs, Expenses and Attorneys' Fees

Subject to final approval by this Court, and in settlement of all claims for attorneys' fees, taxable costs, and non-taxable litigation expenses incurred through the date of entry of the proposed Agreement, Defendant FDOC will tender to Class Counsel the gross sum of $150,000.00, via check made payable to the Social Justice Law Collective Trust Account (Fed. Tax ID No. 46-0961071) (the "Settlement Amount"), within thirty (30) days of the Effective Date.

The Parties agree that this Settlement Amount includes the resolution and payment in full of all of Plaintiffs' claims for reasonable attorneys' fees and costs. Class Counsel's attorneys' fees and costs is based upon an agreed upon amount for fees and costs as part of the amicable resolution of the pending litigation for which liability is in dispute, and shall be paid separately to Class Counsel by Defendant. There is no settlement fund, as damages are not being sought or provided, and therefore, Class Counsel's fees are not a percentage-of-fund calculation and will not operate to reduce the value of the settlement benefit to the Class, but rather, represent a negotiated, discounted lodestar calculation designed to resolve Class Counsel's claim for attorneys' fees and costs pursuant to 42 U.S.C. § 1988, along with any other claims for attorneys' fees and costs Class Counsel may have.[4]

---

[4] Class Counsel has collectively spent roughly 2500 hours on this litigation.  At the Prison Litigation Reform Act rate of $223.50, that would amount to roughly $558,750 in attorneys'

## II.    FINAL COURT APPROVAL

### A.    The Settlement Class Should be Certified Pursuant to FRCP 23

Rule 23(e), Federal Rules of Civil Procedure, requires judicial approval for any compromise of claims brought on a class basis.  Before certifying a class for the purposes of settlement, this Court must find that the Parties have established the criteria set out in Rule 23(a), and at least one of the subsections of Rule 23(b). The Court conditionally certified the Settlement Class in its Preliminary Approval Order.[5]

### B.    The Agreement is Fair, Reasonable and Adequate

In addition to Rule 23's requirements, in determining whether to give final approval to a proposed settlement, "the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and not the product of

---

fees, in addition to thousands of dollars in out-of-pocket expenses. Thus, Class Counsel is agreeing to a deeply discounted amount of attorneys' fees and costs.

[5] *See* Preliminary Approval Order, ECF 170 at ¶ 2 ("The Court previously found that this class certification is appropriate because (a) the Class is so numerous that joinder of all members is impractical, (b) there are common questions of law and fact that predominate over any questions affecting only individual class members, (c) Plaintiffs' claims are typical of the claims of the class, (d) Plaintiffs and their counsel will fairly and adequately protect the interests of the Class, and (e) class treatment is appropriate where, as here, 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."); *see also id.* at ¶ 3 ("The Court now fins that the settlement of this action, as embodied in the terms of the Agreement, is preliminarily approved under Federal Rule of Civil Procedure 23(e).  The Court finds that the terms of the Agreement were the result of substantial discovery, were the product of arm's length negotiations between experienced counsel, and are fair, reasonable, and adequate and well within the range of reasonableness for preliminary settlement approval.").

14

collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).[6] In recognition of the overriding public interest in settling and quieting litigation, particularly in the context of a class action, a court "must not turn the settlement hearing into a trial or a rehearsal of the trial; [the] court is concerned with the likelihood of success or failure and ought, therefore, to avoid any actual determination of the merits." *Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972) (citations omitted). The settlement should be compared "with the likely rewards the class would have received following a successful trial of the case," and should take into account practical considerations, such as the complexity of the case and the expense and likely duration of litigation. *Cotton*, 559 F.2d at 1330.

Courts have further consistently stressed that in weighing the benefits of settlement against the risk of continued litigation, the district court "is entitled to rely upon the judgment of experienced counsel for the parties," and that the recommendation of class counsel should be given a presumption of reasonableness. *Cotton*, 559 F.2d at 1330; *see also Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried."); *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982) ("[T]he court's intrusion upon what is otherwise a private

---

[6] In *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted all decisions of the Fifth Circuit rendered prior to October 1, 1981, as binding precedent.

consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by or collusion between, the negotiating parties, and that the settlement, taken as a whole is fair, reasonable, and adequate to all concerned.").

Guided by these overriding principles, "the Eleventh Circuit has identified six factors to be considered in analyzing the fairness, adequacy, and reasonableness of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement." *LaCour v. Whitney Bank*, 2012 U.S. Dist. LEXIS 151923 (M.D. Fla. 2012), *citing Bennett*, 737 F.2d at 986.

A review of these factors clearly demonstrates that the Agreement is fair, reasonable and adequate. There is no cause to believe that the Agreement is the result of any fraud or collusion; as detailed above, the Agreement is the result of extensive discovery and investigation and is the product of extensive, arm's-length negotiations between experienced counsel. Having evaluated the merits of the case, counsel for the Parties have agreed that the Agreement is in the best interests

16

of their respective clients and the Settlement Class as a whole, and that the Agreement strikes a reasonable balance between the benefits the Settlement Class will receive under this settlement, the fact that Defendant will vigorously oppose the claims asserted in the litigation if the settlement is not approved, and the attendant risks, costs, uncertainties, and delays of litigation.

Consideration of the complexity, expense, and likely duration of the litigation further supports approval of the attached Agreement.  As earlier stated, the litigation in this matter has been extensive and hard-fought.  The Parties conducted extensive discovery over the course of a full year, including the preparation and responses to multiple requests for production of documents, requests for admissions and interrogatories; numerous depositions of FDOC employees, prisoners, and Defendant FDOC pursuant to Rule 30(b)(6); multiple briefed and litigated discovery disputes that were heard by the Court, as well as fully briefed dispositive motions by both Parties.  While Plaintiffs and Class Counsel believe that the constitutional violations alleged in this matter are clear, and are confident in the merits of their claims, the Defendant has indicated that it will vigorously oppose the claims asserted in this matter if the attached Agreement is not approved.  Plaintiff and Class Counsel acknowledge that adverse rulings on several legal issues that could be raised by the Defendant during the litigation of this matter, including, but not limited to, whether the music licenses purchased by

17

Plaintiff give rise to a constitutionally protected property interest, whether Plaintiffs have been deprived ownership of the relevant songs, and whether the Terms and Conditions governing the Digital Music Play Program authorized the challenged conduct, could functionally deny the Settlement Class any and all relief. As such, the Parties jointly assert that the uncertainty of these legal issues, as well as the cost, length, and complexity of future proceedings, necessitates the resolution detailed in the attached Agreement.

As noted above, the attached Agreement constitutes an excellent result for the Class. Defendant FDOC has agreed to restore the ability of each member of the Class to listen to an agreed upon number of songs that were previously purchased under the Digital Music Player Program, through the issuance of Settlement Credits that can be used to purchase songs through the FDOC's Multimedia Tablet Program. Specifically, Defendant FDOC has agreed to provide 3,900,000 Settlement Credits to the Class, in such a manner so that each Class member will be able to replace an agreed upon number of purchased songs under the Digital Music Player Program. That number of credits will provide each class member with one credit for every song over 100 that was lost from the Digital Music Player Program, enabling the class members to replace the same number of songs in the Multimedia Tablet Program and putting them in nearly the same position they were in when their digital music was initially taken.

This relief is excellent, especially considering the circumstances.  Since this is an injunctive case, the only type of relief obtainable was an injunction restoring the class members to their original position—no monetary relief was available, as explained in more detail below.  According to Defendant and its third-party contractors, physically transferring the songs from Digital Music Player accounts was not possible due to licensing and other technological restrictions.  Moreover, the FDOC objected to allowing inmates to keep their old digital music players because 1) it would create a security risk; and 2) it was necessary to have kiosks and a company to service and impose security measures on the players, and none was available because the FDOC has no contract with Keefe, the former vendor. Thus, the only feasible form of relief in order to restore class members to their original position was song credits.

Moreover, because the settlement benefit to Class Members is of a purely injunctive nature, the amount that Defendant has agreed to pay to Class Counsel for their reasonable attorneys' fees and costs shall be paid separately by Defendant, and will not operate to reduce the value of the settlement benefit to the Class in any manner.

The Agreement also has no obvious deficiencies, and does not mandate preferential treatment to class representatives or segments of the class.  *See Wm. Wrigley Jr. Co.*, 2010 WL 2401149 at *2.  The Agreement constitutes a complete

19

resolution of all claims against Defendant FDOC by Plaintiffs and all members of the Class, involving all alleged violations of their Fifth and Fourteenth Amendment rights, and no member of the Class, including the named Plaintiffs, will receive any monetary payment or additional relief as part of the relief contained therein.

Finally, the substantial benefit recovered for members of the Settlement Class - as well as the reaction to the settlement by those members - further supports a finding that the attached Agreement is fair, reasonable and adequate. While the Parties acknowledge that the Court has received 658 notices from putative Settlement Class members regarding the settlement, a closer look at the notices filed reveals that many of them (1) do not include any objections or are illegible;[7] (2) constitute notices pursuant to the Supplemental Notice that should have been directed to the Class Administrator;[8] or (3) object to facets of the Agreement that do not exist and likely result from a misunderstanding of the Agreement.[9] *See* Trevisani Declaration at ¶ 17.

---

[7] The Parties have identified 78 such filings, which do not lodge an objection to the settlement, and instead express various sentiments including approval of the settlement, requesting to be included in it, requesting to speak at the hearing, or making various other comments.

[8] The Parties have identified 40 such filings, which do not object to the settlement, but instead report administrative issues with receiving the previously issued credits, most of which have been resolved by the Parties working in tandem with the Class Administrator.

[9] The Parties have identified 5 such filings, which complain of provisions of the Agreement that do not exist and likely result from a misunderstanding of the Agreement and/or underlying settlement.

An additional 465 notices from putative Class Members are identical or near-identical copies of the same form "objection," drafted by someone outside of prison and distributed widely throughout FDOC facilities, and which contains numerous factual errors and mischaracterizations of the Agreement.  This scheme to inundate the Court with verbatim objections, as explained by the document filed at ECF 453 (and attached as Exhibit 5 hereto), originated when an un-incarcerated paralegal was hired by an inmate (who may or may not be a Class Member) to draft an inaccurate and misleading objection, distribute it widely throughout FDOC facilities, and then encourage inmates to get as many inmates to copy the letter as possible and submit them to the Court in bulk.  For 126 of these filings, the name on the objection was different than the name on the envelope; for 50 of them, the handwriting on the objection was clearly different than the handwriting on the envelope, while 34 of them were literally pre-printed forms with spaces only for the filer's name.  *See* Trevisani Declaration at ¶ 17.

When you remove all of the non-objections listed above – and properly count the 465 identically filed notices as one objection – the Parties note that this leaves only 152 actual objections, equivalent to 1.4% of the roughly 11,000 class members.  This indicates an excellent result.[10]  The absence of any meaningful

---

[10] Even if you count every notice filed by a putative Class Member as a separate objection – even those that do not state an objection – the 658 total notices filed still represents only 6% of the

21

objection by class members is an important factor in evaluating the fairness, reasonableness and adequacy of the settlement and supports approval of the settlement. *See Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1328 (S.D. Fla. 2007) (citations omitted) ("The reaction of the class is an important factor in gauging whether a settlement is fair, reasonable and adequate. While a low percentage of objections points to the reasonableness of a proposed settlement, a high percentage of objections signals that a proposed settlement is not fair or reasonable.").

With regards to those remaining objections, the Parties have categorized them by subject matter below, and have included a brief response to each:

*Settlement Credit per Dollar Spent*

As noted above, the bulk of the objections relate to the argument that Class Members should have received 1.7 Settlement Credits per song purchased, rather than receiving one credit per song purchased.

The Parties anticipated this objection: if Class members spent $1.70 per song, one could surmise that just compensation would be 1.7 Settlement Credits for each song purchased under the Digital Music Player Program. But this argument fails to take into consideration that many songs under the FDOC's Multimedia Tablet Program are cheaper than they were under the Digital Music

proposed Settlement Class. This would still represent an excellent result supporting final approval.

Player Program; songs can be obtained under the FDOC's Multimedia Tablet Program for as little as one Settlement Credit.[11]

More importantly, this objection also fails to take into account this Court's prior findings throughout the course of this matter. This Court initially denied class certification because the proposed class was comprised of "some inmate[] winners and some losers." ECF 64 at 5. The winners being those incarcerated persons who were provided with Tablet Media Credits sufficient to replace as many or more songs than they had obtained under the Digital Music Player Program, and the losers, who were provided with Tablet Media Credits insufficient to replace the number of songs they had obtained under the Digital Music Player Program. *See id.* As a result, the Court found that numerosity was not initially satisfied, as "while one might reasonably guess that the number [of losers] is sufficient, a district court cannot properly certify a class based on such a guess." *Id.* The Court further found that the Plaintiff's claim was not typical of the "winners," because he was a "loser" and as such, he was also not an adequate class representative. *Id.*

With regards to this particular objection, the Court subsequently found that the "winners" did not have a claim for an unconstitutional taking, because

---

[11] *See* ECF 71-2, Contract Between the Department of Corrections and JPAY, INC., Contract #C2885 at p. 37, ATTACHMENT A ("Fee Structure").

"[p]risoners who bought [100] or fewer songs have suffered no loss; the Department's replacement program includes [100] credits that will allow those prisoners to replace the songs without cost."  Order Certifying a Class, ECF 163 at 3.  As such, the Court essentially found that, because a Tablet Media Credit could be used to replace a song under the FDOC's Multimedia Tablet Program, one Tablet Media Credit is just compensation for the taking of one song under the Digital Music Player Program.  *See id.*[12]  As such, these objections should be properly overruled.

Moreover, FDOC had additional defenses that the Court may have found compelling and without the settlement, the Class members may have obtained no relief whatsoever.  And, given the Court's findings referenced above, even if the Court ruled in favor of Plaintiffs, the best relief the Class members would likely have obtained would be less than the likely ultimate relief obtained through the current Agreement.  Under the terms of the Agreement, the Class members are in fact likely going to get a windfall by comparison, as the Parties anticipate being able to make a second distribution from the available 3.9 million Settlement Credits on a *pro rata* basis, which would result in each Class member receiving

---

[12] Some of the objectors have correctly pointed out that not all songs are available for one Tablet Media Credit.  But, this fact was presented to the Court in the Fee Structure and did not alter the Court's analysis and should not now, because, although not all songs are available for one Tablet Media Credit, there are many songs available for one Tablet Media Credit, and therefore, Settlement Class members can use each Tablet Media Credit to replace each song purchased under the Digital Media Player Program.

24

*more* settlement credits than songs originally purchased.  For all the reasons stated above, these objections should be overruled.

### *Money not Credits*

These individuals preferred to receive money deposited to their inmate account, rather than credits in the FDOC's Multimedia Tablet Program. For the reasons set forth below, however, the Parties believe that it would be nearly impossible to obtain any monetary relief in this case.

First, this Court would be barred from hearing this case if there was a claim against the FDOC for monetary relief because of Eleventh Amendment immunity. As such, Plaintiffs could not be in this forum unless the State was willing to waive Eleventh Amendment immunity, which it was not, and is not willing to do.  Next, had Plaintiffs brought state-law claims for money damages in State court, the State would enjoy sovereign immunity insulating it from payment of money damages. Although Florida has waived sovereign immunity by statute, the maximum recovery, absent an extremely unlikely issuance of a claims bill from the legislature, for the Class members' aggregate claims would be $300,000, which is far less than the 3.9 million Settlement Credits obtained through the proposed Agreement.  *See* Florida Statutes § 768.28(5).

Moreover, the state has a costs-of-incarcerated lien against every incarcerated person in the state for $50 per day for the length of their sentence, and

$250,000 for those sentenced for a capital or life felony. Fla. Stat. § 960.293. The state has the right to bring this counter-claim against any state law claim, which it regularly does. *Id*. Thus, any recovery on a state-law claim would have been offset by the cost-of-incarceration counterclaim, which would amount to at least $18,250 per class member ($50 x 365 = $18,250), wiping out any potential recovery and putting putative Class Members even further in debt to the state. Therefore, for the aforementioned reasons, these objections should be overruled.[13]

*Previous Credits*

These individuals generally believed that the previously distributed 100 credits by JPay should not count toward the settlement, and therefore that those who purchased fewer than 100 songs should not have been excluded from the Settlement Class.

This argument fails for several reasons. First, anyone who purchased fewer than 100 songs under the Digital Music Player Program is not part of the Settlement Class as set by the Court, and therefore has no standing to object. This reason is sufficient to overrule any of their objections, as none of their claims are being released and they are not part of this case.

To the extent that anyone asserting this objection is part of the Settlement Class, their objection should be overruled given the Court's implicit finding that

---

[13] Fourteen Class members asserted both of the objections above, and for the reasons stated, their objections should be overruled.

one Tablet Media Credit is just compensation for the taking of one song purchased under the Digital Music Player Program, and therefore anyone who purchased less than 100 songs and brought a claim would likely have that claim dismissed for failure to establish the element of a lack of just compensation.  *See* ECF 163 at 3.

### *Unclear*

These individuals voiced general dissatisfaction without any further detail. Given that these objectors did not provide sufficient clarity to reasonably address their objections, these objections should be overruled.  *See e.g. United States v. City of N.Y.*, No. 07-CV-2067, 2015 U.S. Dist. LEXIS 29859, at *82 (E.D.N.Y. Mar. 11, 2015) (Overruling objection where "objection is unclear" and "therefore provides no basis for the court to consider" it.); *Friedman v. Guthy-Renker, LLC*, No. 2:14-cv-06009, 2017 U.S. Dist. LEXIS 220559, at *26 (C.D. Cal. Aug. 21, 2017) (Overruling "objections [that] are too vague for the Court to properly analyze.").

### *Opt-Outs*

Several of the above-referenced notices further reference a desire to "opt-out" of the settlement reached in this matter.  As a general rule, opt-outs are not permitted in Rule 23(b)(2) class actions, such as this one.  *See Kincade v. Gen. Tire*

27

*& Rubber Co.*, 635 F.2d 501, 507 (5th Cir. Jan. 30 1981)[14] ("For several reasons we find that the right to opt out, which is denied when a Rule 23(b)(2) case is tried, also need not be provided when such a case is settled.").  "[A]llowing objectors to opt out [of a 23(b)(2) class] would discourage settlements because class action defendants would not be inclined to settle where the result would likely be a settlement applicable only to class members with questionable claims, with those having stronger claims opting out to pursue their individual claims separately." *Id.* "Congress expressly recognized the inequity of this result and, for that reason, did not provide for opt outs in [Rule 23(b)(2)] class actions." *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 473 n.14 (S.D. Fla. 2002) (citing *Kincade*, 635 F.2d at 507).

The Parties note that the Eleventh Circuit has held that there is a limited exception to this rule in antidiscrimination cases brought under Title VII of the Civil Rights Act of 1964, where the equitable class relief sought includes the monetary payment of back pay to class members. *See Holmes v. Continental Can Co.*, 706 F.2d 1144, 1154-55 (11th Cir. 1983) (discussing the unique nature of "the monetary relief stage of a Title VII case").  In *Holmes*, the Eleventh Circuit noted that although opt-outs are rarely permitted in a (b)(2) class, an opt-out mechanism may be necessary in certain Title VII cases where the provision of monetary

---

[14] In *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted all decisions of the Fifth Circuit rendered prior to October 1, 1981, as binding precedent.

damages as a result of settlement and the presence of numerous, atypical claims among the class members "give[s] rise to conflicts of interest within the class … [and the need] to protect the interests of absent class members."  *See id.* ("The presence in the lawsuit of a significant number of atypical claims not common to the class activates a requirement that absent class members be given an opportunity to opt out of the class at the monetary relief stage of a Title VII lawsuit or settlement.").

*Holmes* is inapposite to the case at bar for several reasons.  First, this is not a Title VII lawsuit and there is no "monetary relief stage" inherent in the settlement of Plaintiffs' constitutional takings claims.  As discussed *supra*, there is no claim for monetary relief as part of this case and monetary relief is not part of the relief afforded by the Agreement.  Moreover, while the *Holmes* Court noted that an opt-out mechanism was required under the specific facts of that case because of the "significant number of atypical claims not common to the class," here all members of the Settlement Class are affected equally by the equitable relief provided by the Agreement (i.e., each member of the Settlement Class is receiving the same number of Settlement Credits per song taken, and any excess credits will be distributed equitably based on the number of songs taken), and there are no conflicts of interest between class members with regards to the equitable relief provided.  *See, e.g., Holmes*, 706 F.2d at 1158 ("A … class in which all members

29

are affected equally by a settlement would, of course, be sufficiently homogeneous to obviate any need for an opt out protection.").

As such, this case does not fall within the narrow exception outlined by the Eleventh Circuit, and to the extent that any Class Members desire to opt-out of the Settlement Class, their request should be denied.

## III.   CONCLUSION

As a result of the discovery described above, Class Counsel, counsel for Defendant, and the Class Representatives had ample foundation upon which to evaluate the proposed settlement. Each party, therefore, possessed the necessary information to evaluate the strengths and weaknesses of their respective cases in order to discuss settlement effectively. Armed with this information, the Parties were able to reach the present settlement only after extensive motion practice, discovery, lengthy settlement discussions, and further negotiations over settlement terms and language. As such, the Parties jointly assert that the uncertainty of these legal issues makes resolution via settlement desirable, and that the Agreement represents a fair, reasonable, and adequate resolution that is in the best interests of all Parties and the Settlement Class.

WHEREFORE, for all of the foregoing reasons, the Parties jointly request the Court's entry of an Order and Final Judgment:

(1) granting final approval of the proposed settlement as set forth in the Agreement;

(2) certifying the Settlement Class pursuant to Rule 23(a) and (b)(2), Federal Rules of Civil Procedure;

(3) approving payment to Class Counsel as set forth in the Agreement;

(5) dismissing the action; and

(6) providing such other and further relief as the Court deems just and reasonable.

**Certificate of Word Limit.**  Pursuant to N.D. Fla. Local Rule 7.1(F), this joint motion contains 7,220 words.

Respectfully submitted this 18th day of November, 2020.

Dante P. Trevisani, Esq.
Fla. Bar No. 72912
*DTrevisani@FloridaJusticeInstitute.org*
Ray Taseff, Esq.
Fla. Bar No. 352500
*RTaseff@FloridaJusticeInstitute.org*

FLORIDA JUSTICE INSTITUTE, INC.
3750 Miami Tower
100 S.E. Second Street
Miami, Florida 33131
Tel:  305.358.2081
Fax:  305.358.0910

Shawn A. Heller, Esq.
Florida Bar No. 46346

shawn@sjlawcollective.com
Joshua A. Glickman, Esq.
Florida Bar No. 43994
josh@sjlcollective.com

Social Justice Law Collective, PL
974 Howard Avenue
Dunedin, Florida 34698
Tel:  202-709-5744

**Attorneys for the Plaintiffs**

By:   *s/Joshua A. Glickman*
        Joshua A. Glickman, Esq.


ASHLEY MOODY
ATTORNEY GENERAL

*/s/ Miguel A. Olivella, Jr.*
MIGUEL A. OLIVELLA, JR.
Senior Assistant Attorney General
Fla. Bar No. 253723
Office of the Attorney General
Complex Civil Litigation Division
The Capitol - PL 01
Tallahassee, FL 32399-1050
(850) 414-3817
Miguel.Olivella@myfloridalegal.com
**Attorney for Defendant**
**Mark S. Inch**

32

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed today, November 18th, 2020, the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all persons registered to receive electronic notifications for this case, including all opposing counsel.

By: _s/Joshua A. Glickman_
    Joshua A. Glickman, Esq.